**UNITED STATES of America,**
**Appellee,**

v.

**William N. JACKSON, Defendant–**
**Appellant.**

**No. 02–1089.**

United States Court of Appeals,
Second Circuit.

May 16, 2003.

Michael G. Considine, Day, Berry & Howard, LLP, Stamford, CT, for Appellant.

Eric J. Glover, Assistant United States Attorney, New Haven, CT, for Appellee.

Present: MINER, McLAUGHLIN, and POOLER, Circuit Judges.

### SUMMARY ORDER

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of said District Court be and it hereby is **AFFIRMED.**

William N. Jackson appeals from a judgment of the United States District Court for the District of Connecticut. After a jury convicted Jackson of eleven counts of aiding and assisting the filing of false tax returns in violation of 26 U.S.C. § 7206(2), the court sentenced him to a term of forty-two months imprisonment. Jackson appeals the conviction, asserting various trial errors, and the sentence. With respect to the sentence, Jackson urges that the court improperly calculated the loss attributable to his conduct.

Jackson was the sole proprietor of a tax preparation business, the Tax Center, which used the Internal Revenue Service's ("IRS") electronic filing system for submitting returns. Filing tax returns electronically creates an advantage for the preparer because its preparation fee can be automatically deducted from the refund, which is directly deposited to a bank that has issued a loan in anticipation of the refund. In order to file electronically, a preparer must have an electronic filing identification number ("EFIN"), which may be revoked if the preparer acts improperly.

By indictment returned February 24, 2000, a grand jury charged Jackson with filing eleven false tax returns for six different clients. The falsities included creating non-existent businesses and non-existent business expenses, claiming fictional deductions and dependent exemptions, and misstating income.

All of the taxpayers named in the indictment testified against Jackson. They claimed that certain items on their returns were false and that they had not given Jackson or the Tax Center the falsely reported information. In addition, IRS Special Agent Richard Schumacher testified that Jackson told him that he never created a fictitious business unless a client instructed him to do so. Schumacher further testified, over Jackson's objection, that Jackson's admission was significant because of the "elements of the offense" and then listed the elements of the offense including "knowledge that the returns are false as a material matter, and that the [preparer submits the false returns] willfully and with voluntary intent to do so." Schumacher also testified, again over objection, that if Jackson signed electronic return forms that had actually been prepared by others, he committed a criminal violation.

Michael Kinsley, the IRS electronic tax administrator coordinator who supervised Jackson's filings, testified that 99% of returns filed by Jackson for 1993 and 1994 generated refunds although the nationwide average for refunds was between 30% and 35%.

The government also introduced evidence of bad conduct not included in the indictment. First, Joanne Burks, a friend of Jackson's, testified that in October or November 1995, apparently around the time his own EFIN was revoked, Jackson told her he was being audited by the IRS and asked to use her EFIN number to file

returns. Burks allowed Jackson to use the number. Second, IRS auditor Janice Ferretti testified that she conducted an audit of Jackson's 1993 personal tax return in August 1995. During the audit, Jackson furnished a letter from his attorney, Sharon Skyers Jenkins, stating that Jackson had legal expenses of approximately $300 in 1993. Ferretti confronted Jackson with her belief that the relevant date had been altered. Jackson admitted that he changed "1994" in the original to "1993." Jenkins, who testified before Feretti, identified the original letter with the "1994" date and testified that she had not made the change in the copy Jackson submitted to the auditor. Jackson objected to the proof of both incidents. Although the court overruled his objections, it gave instructions to the jury limiting its consideration of the "bad acts" evidence to the issue of willfulness.

Jackson testified in his own defense. He claimed that he did not prepare all of the returns that were filed under his EFIN and that some were done by "people that came around that knew how to do taxes." He kept no documentation concerning his employees and none of the documentation furnished to him by taxpayers. Jackson also testified that he included in tax returns only the income, expenses, and deductions that were reported to him by the taxpayers. On cross-examination, the prosecutor repeatedly confronted Jackson with testimony from other witnesses that contradicted Jackson's testimony and asked if Jackson recalled the testimony.

After Jackson's conviction, the district court conducted a sentencing hearing to consider objections to the pre-sentence report. During the hearing, testimony was offered concerning the amount lost to the government as a result of false returns Jackson submitted. Special Agent Schu-

macher testified that, by auditing returns Jackson submitted that were not included in the counts of conviction, the government arrived at an underpayment figure of $433,406.26. The district court found a loss in excess of $325,000 by adding the $17,953.81 in tax loss from the returns included in the indictment to the tax losses from only those 1993 and 1994 Tax Center-generated returns for which the taxpayers had agreed to the government's calculation of the underpayment. The court also found that the totality of the evidence established that Jackson acted with fraudulent intent with respect to the returns included in the calculation. In marshaling this evidence, the court referred to (1) the proof that 99% of Jackson's returns resulted in refunds; (2) Jackson's lack of credibility as demonstrated by "his selective recollection of details;" (3) Jackson's admissions to investigating agents; and (4) his use of Burks' EFIN number and submission of an altered document to the IRS.

On appeal, Jackson makes many arguments, but we need discuss only his claims that (1) the prosecution engaged in improper cross-examination; (2) admission of the prior bad acts evidence was error; (3) a government witness was improperly allowed to testify to legal conclusions; and (4) the loss was improperly calculated.

The prosecution's cross-examination of Jackson was not improper. *See United States v. Weiss,* 930 F.2d 185, 195 (2d Cir.1991) (not finding error in similar cross-examination).

■ Jackson's two principal evidentiary contentions–that prior bad acts evidence was improperly admitted and that a government witness improperly stated legal conclusions–are more substantive. However, we need not address their merits because, even considered cumulatively, any errors committed were harmless. *See United States v. Myerson,* 18 F.3d 153, 167

(2d Cir.1994) (holding that even if prior bad acts evidence should not have been admitted, its admission was harmless in light of "sufficiently strong" additional evidence); *see also United States v. Taubman,* 297 F.3d 161, 165 (2d Cir.2002) (same with respect to evidentiary rulings in general); *United States v. Duncan,* 42 F.3d 97, 103 (2d Cir.1994) (applying harmless error analysis to claim government witness testified to legal conclusions). The evidence against Jackson was overwhelming. The testimony of the six taxpayers was buttressed by Jackson's own admissions to government agents and by the incredible refund rate achieved for Jackson's clients. Because of this overwhelming evidence, we conclude that any error was harmless and does not require a new trial. *See United States v. Tubol,* 191 F.3d 88, 97 (2d Cir. 1999) (indicating that the weight of the evidence against the defendant is the most important factor in a harmless error analysis).

■ In calculating loss for sentencing purposes, the district court need only "make a reasonable estimate" where "the amount of tax loss [is] uncertain." U.S.S.G. § 2T1.1 cmt. n. 1; *see also United States v. Bryant,* 128 F.3d 74, 76 (2d Cir.1997) (per curiam) (upholding estimation of loss from unaudited returns where 20% of over 8,500 returns had been audited). Jackson contends that the district court's calculation was unreasonable because (1) Agent Schumacher had not personally performed the audits; (2) the record did not reveal whether the audits involved in-person interviews of the taxpayer; (3) returns were counted regardless of whether they were prepared by Jackson or by another Tax Center employee; and (4) contrary to statements in the PSR and the position of the government at sentencing, Jackson neither refused to identify his employees in 1993

and 1994 nor testified inconsistently with the statements he made to government agents prior to trial. None of these arguments has merit. First, because the district court's determination concerning Jackson's credibility was not clearly erroneous, it cannot be disturbed. *United States v. Medley*, 313 F.3d 745, 748 (2d Cir.2002). Second, responsibility for the inability to separate returns Jackson prepared from those prepared by other employees rests squarely on the shoulders of Jackson, the only person in a position to know which returns he prepared. Especially in light of (1) the 99% refund rate and (2) a notation in one file from an employee that he or she had to create a fictional business for a taxpayer, it was reasonable for the court to conclude that Jackson acted with fraudulent intent with respect to all the fraudulent returns. Finally, no particular audit method is necessary for the audit results to be admissible at a sentencing hearing, and it was not necessary that each auditor testify at the hearing. *See* U.S.S.G. § 6A1.3 (stating that rules of evidence do not apply to resolving disputes relevant to sentencing).

We have considered all of Jackson's remaining arguments and found that they lack merit.