# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued December 9, 2014          Decided July 24, 2015

No. 12-3092

UNITED STATES OF AMERICA,
APPELLEE

v.

ENYINNAYA E. UDO,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:12-cr-00090-1)

*Rosanna M. Taormina*, Assistant Federal Public Defender, argued the cause for appellant. With her on the briefs was *A.J. Kramer*, Federal Public Defender. *Tony Axam Jr.*, *Federal Public Defender*, entered an appearance.

*Elissa R. Hart-Mahan*, Attorney, U.S. Department of Justice, argued the cause for appellee. With her on the brief were *Ronald C. Machen*, U.S. Attorney, *Frank P. Cihlar*, Chief, Criminal Appeals and Tax Enforcement Policy Section, U.S. Department of Justice, and *Gregory Victor Davis,*

Attorney. *Elizabeth Trosman*, Assistant U.S. Attorney, entered an appearance.

Before: HENDERSON, TATEL, and GRIFFITH, *Circuit Judges.*

Opinion for the Court filed by *Circuit Judge* GRIFFITH.

GRIFFITH, *Circuit Judge*:

A jury convicted Enyinnaya Udo of twenty-five counts of aiding or assisting in the filing of a false tax return. He appeals those convictions, alleging that the court improperly instructed the jury and that he received ineffective assistance of counsel. Finding neither error in the jury instruction nor prejudice from the alleged ineffectiveness, we affirm Udo's conviction. Udo also appeals the restitution order imposed as a condition of his supervised release. The government has conceded error on this point, and we agree that the court improperly calculated the restitution. We thus remand the case to the district court to reconsider that aspect of Udo's sentence.

I

Udo was a certified public accountant (CPA) who owned a firm that derived most of its revenue from preparing personal tax returns. Trouble for Udo arose when the IRS noticed that returns he prepared frequently claimed thousands of dollars in unreimbursed employee expenses. An employee incurs these expenses, such as travel costs, use of a personal vehicle for business, or professional insurance premiums, as part of her job but is not reimbursed for them. A taxpayer can lower her tax liability or increase her tax refund by claiming deductions for such expenses on her tax return. *See generally* Internal Revenue Service, *Miscellaneous Deductions*, Department of

the Treasury 2-3 (Dec. 29, 2014), http://www.irs.gov/pub
/irs-pdf/p529.pdf.

Udo prepared dozens of returns that claimed unreimbursed
employee expenses for clients who never told him they had
incurred such expenses or asked him to claim them on their
returns. Some of these claims were in excess of $20,000.
Sometimes, Udo would arrange a loan that would provide a
client with upfront cash in anticipation of the tax refund Udo's
work had secured. Udo would then deduct his fee from this
loan.

Suspicious of these returns, the IRS conducted a sting
operation targeting Udo in 2008. An undercover agent posed as
a walk-in client and asked for Udo's help preparing a fake tax
return while she surreptitiously videotaped the consultation.
After an initial calculation showed that the "client" owed taxes,
Udo prepared a return claiming $14,684 in unreimbursed
employee expenses without the agent suggesting that she had
incurred them. This adjustment transformed the agent's
apparent tax liability into a tax refund of $1,301. Udo had the
agent sign the IRS form that claimed the expenses. He then
arranged for his fee to be deducted from a loan that he arranged
for her to receive that day in anticipation of her tax refund. A
grand jury later indicted Udo on twenty-five counts of
violating I.R.C. § 7206(2), which makes it a felony to
"[w]illfully" help a taxpayer file a materially false tax return.

We recount only the events at Udo's trial relevant to this
appeal. During his opening statement at trial, Udo's counsel
told the jury that the case "comes down to . . . he said, she
said." Trial Tr. 168 (Aug. 1, 2012). Counsel went on to
promise that the jury would "hear from Mr. Udo," who would
explain that he acted in good faith based on what his clients had

told him about their expenses. *Id.* at 173. But Udo never testified.

Instead, when the government's case came to a close, Udo's counsel asked the court for a ruling limiting any cross-examination of Udo to those issues about which he would testify: his background, his education, and his knowledge of the law and his professional duties. Relying on *Brown v. United States*, defense counsel argued that a defendant who testifies in his own defense does not waive the Fifth Amendment's protection from self-incrimination to matters unrelated to his testimony. *Cf. Brown v. United States*, 356 U.S. 148, 154-55 (1958). In response, the government argued that, at the very least, Federal Rule of Evidence 608(b) permitted questioning Udo about his character for truthfulness.[1] Skeptical of Udo's request, the court stated that it would be "very, very, very surprised" if counsel was correct. Trial Tr. 67 (Aug. 3, 2012). After a short break to consider the question, the court announced that it would not limit cross-examination before Udo testified, and that his credibility was fair game for the government to examine.[2] Udo's counsel decided not to call him to testify.

---

[1] Rule 608(b) allows a party to inquire on cross-examination into specific instances of a witness's conduct if those instances are probative of the witness's character for truthfulness. *See* FED. R. EVID. 608(b).

[2] Udo does not appeal the court's determination that the government would likely be able to cross-examine him about his character for truthfulness. *Cf. Brown*, 356 U.S. at 154-55 ("If [a defendant] takes the stand and testifies in his own defense his credibility may be impeached and his testimony assailed like that of any other witness, and the breadth of his waiver is determined by the scope of relevant cross-examination.").

After the parties rested, the court instructed the jury on the elements of I.R.C. § 7206(2) by tracking the language of the statute and using the same definition of "willfully" employed by the Supreme Court in *Cheek v. United States*, 498 U.S. 192, 201 (1991). Udo urged that to establish that he acted willfully, the government must also prove that he knew that the tax returns in question were materially false or fraudulent. The court refused that request. The court also instructed the jury on tax principles drawn from titles in the Code of Federal Regulations governing the Treasury Department and the IRS. Udo's counsel agreed to that instruction.

The jury convicted Udo on all twenty-five counts. At sentencing, the government's sentencing memorandum claimed that Udo owed $311,791 in restitution. An IRS revenue agent explained that he calculated this figure based on the twenty-five false returns Udo was convicted of preparing and numerous other false returns that the IRS discovered and considered to be part of Udo's same criminal scheme. After crediting payments that Udo's former clients had made toward outstanding tax liabilities, the government requested that the court order Udo to pay restitution of $262,966 as a condition of supervised release. The court sentenced Udo to twenty-four months imprisonment and ordered him to pay that amount in restitution as a condition of supervised release.

II

Udo argues that the court erred by failing to instruct the jury that I.R.C. § 7206(2) requires the government to prove beyond a reasonable doubt that he knew that the income tax returns in question were materially false. The government contends we must review the instruction for plain error because Udo made no objection to it at trial. *Cf.* FED. R. CRIM. P. 52(b) (permitting only plain error review for issues "not brought to

the court's attention" below). Udo insists that he objected to the instruction before trial, preserving the question for our de novo review. *See United States v. Stadd*, 636 F.3d 630, 639-40 (D.C. Cir. 2011). But we need not resolve this dispute. Udo's challenge fails under either standard.

I.R.C. § 7206(2) criminalizes "willfully aid[ing] or assist[ing]" in the filing of a false or fraudulent tax return. The Supreme Court has held that in tax cases, "willfully" or "willfulness" means "the voluntary, intentional violation of a known legal duty." *Cheek*, 498 U.S. at 201 (internal quotation marks omitted). Udo maintains that he could not have voluntarily and intentionally aided or assisted in the filing of a false or fraudulent tax return without knowing that the returns were in fact false or fraudulent.[3] He argues his conviction should be set aside because the instruction on the elements of the offense did not require the government to prove as much.

We have previously held that a court's refusal to give a requested jury instruction is not reversible error if that instruction was "'substantially covered in the charge actually

---

[3] Most of our sister circuits agree with Udo's interpretation of the statute. Four circuits have pattern jury instructions for I.R.C. § 7206(2) that include a knowledge element similar to the one Udo requested. *See* Pattern Crim. Jury Instr. 5th Cir. 2.97 (2012); Pattern Crim. Jury Instr. 7th Cir. 7206(2) (2012); Pattern Crim. Jury Instr. 10th Cir. 2.94 (2011); Pattern Crim. Jury Instr. 11th Cir. 109.2 (2010). Two more circuits have adopted the same through case law. *See United States v. Stadtmauer*, 620 F.3d 238, 252-59 (3d Cir. 2010); *United States v. Searan*, 259 F.3d 434, 441 (6th Cir. 2001). And three more have assumed, without explicitly holding, that knowledge of falsity is an element of I.R.C. § 7206(2). *See Driscoll v. United States*, 376 F.2d 254, 254 (1st Cir. 1967); *United States v. Holecek*, 739 F.2d 331, 335 (8th Cir. 1984); *United States v. Jackson*, 65 F. App'x 754, 756 (2d Cir. 2003).

delivered to the jury.'" *United States v. Hurt*, 527 F.3d 1347, 1351 (D.C. Cir. 2008) (quoting *United States v. Taylor*, 997 F.2d 1551, 1558 (D.C. Cir. 1993)). This follows from the principle that courts do not review discrete elements of a jury instruction in isolation but rather in the overall context of how the court told the jury to go about its work. *See Boyd v. United States*, 271 U.S. 104, 107 (1926).

Udo's argument falters under this standard. He seizes upon the court's failure to provide his proposed instruction as part of the instruction on the elements of I.R.C. § 7206(2), but he overlooks other instructions that "adequately conveyed the substance of the requested instruction to the jury." *Hurt*, 527 F.3d at 1351. Beyond the specific instruction that Udo finds inadequate, the court also instructed the jury that "[g]ood faith is an absolute defense to the charges in this case," and "[a] defendant is under no burden to prove his good faith; rather the prosecution must prove that the defendant knew the deductions and credits were false or fraudulent." Trial Tr. 27 (Aug. 6, 2012). This instruction on good faith informed the jury in no uncertain terms that Udo had an "absolute defense" to the charges against him unless he "knew the deductions and credits were false or fraudulent." *Id*. at 26-27. The jury thus understood that it could not convict Udo unless it found that he knew the returns were materially false—precisely what Udo wanted the jury to understand with his proposed instruction on the elements of I.R.C. § 7206(2).

Reading the instructions as a whole, we conclude that the court's instruction on good faith "substantially covered" the knowledge element that Udo requested. *See Hurt*, 527 F.3d at 1351. His challenge to the jury instruction on the elements of I.R.C. § 7206(2) is therefore denied.

III

Udo claims that his trial counsel made two principle mistakes that rendered his assistance constitutionally ineffective. First, counsel promised in his opening statement that Udo would testify even though Udo never took the stand. Second, counsel agreed to an instruction that allegedly permitted the jury to convict Udo of failing to observe professional standards of care rather than of violating a criminal statute.

The "general practice" of this court is to remand an ineffectiveness claim for an evidentiary hearing. *See United States v. Rashad*, 331 F.3d 908, 909 (D.C. Cir. 2003) (internal quotation marks omitted). This is unnecessary, however, if "the trial record conclusively shows that the defendant either is or is not entitled to relief." *Id*. at 910 (internal quotation marks omitted). Here, remand is not needed because the record makes clear that Udo is not entitled to relief.

We review a claim for ineffective assistance of counsel under the familiar test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). A defendant must show not only "that [his] counsel's performance was deficient" but also "that the deficient performance prejudiced the defense." *Id.* at 687. "Prejudice" means a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A "reasonable probability" is one "sufficient to undermine confidence in the outcome." *Id*. If the defendant fails to demonstrate prejudice, we may affirm the conviction without deciding whether counsel's performance was deficient. *See, e.g.*, *United States v. Williams*, 488 F.3d 1004, 1010 (D.C. Cir. 2007). We do so here.

We consider each of Udo's arguments that his trial counsel was ineffective while keeping in mind that the government's case against him was, in a word, overwhelming. The prosecution played for the jury a video of Udo committing the crime and presented twenty-five separate tax returns he prepared that listed unreimbursed employee expenses. Udo's actions were thus never in doubt. Nor was his intent: Six witnesses swore that they never told him that they incurred the expenses on their returns, and Udo—a licensed CPA—never introduced a shred of evidence suggesting that he thought that making up these expenses out of whole cloth was somehow permissible. The government, in other words, put on a comprehensive case supported by significant evidence. The bar Udo must clear to demonstrate that any mistake by his trial counsel casts doubt on the outcome, *see Strickland*, 466 U.S. at 694, is thus a high one.

Udo argues that his counsel was constitutionally ineffective because he incorrectly promised the jury that it would hear from Udo. The false promise was especially prejudicial, Udo argues, because his counsel characterized the case from the start as a "he said, she said" matter that depended on Udo providing the "he said." Udo points to cases from several of our sister circuits finding ineffectiveness when a defense attorney mistakenly promised that a witness would testify. *See McAleese v. Mazurkiewicz*, 1 F.3d 159, 166 (3d Cir. 1993); *Ouber v. Guarino*, 293 F.3d 19, 27 (1st Cir. 2002); *United States ex rel. Hampton v. Leibach*, 347 F.3d 219, 258-59 (7th Cir. 2003); *Saesee v. McDonald*, 725 F.3d 1045, 1049-50 (9th Cir. 2013).

As an initial matter, "the [Supreme] Court has emphasized the limited nature of any exceptions to the general rule that a defendant must demonstrate actual prejudice." *Ouber*, 293 F.3d at 32. That is, only a handful of mistakes by counsel, none

in play here, allow a court to presume constitutional ineffectiveness. *See Bell v. Cone*, 535 U.S. 685, 695-96 (2002) (identifying only three examples of ineffectiveness so damaging that prejudice is presumed). The Court has never said, and we are not prepared to say now, that falsely promising in an opening statement that a witness will testify necessarily prejudices a defendant. We are thus left to look at the evidence against Udo, evaluate the gravity of the harm that counsel's false promise may have caused, and determine whether Udo suffered prejudice as a result.

Although counsel's promise was a tactical misstep, it does not raise a "reasonable probability . . . sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. We fail to see how the unfulfilled promise in the opening statement had any bearing on how the jury evaluated the credibility of either the videotape or the witnesses. Udo had the same opportunity to cross-examine witnesses and question the veracity of the videotape that he would have had even if counsel had never made the promise. We find no reasonable probability that the jury would have weighed this evidence and come to a different outcome had counsel never promised the jury that Udo would testify.

Nor do the cases Udo cites from our sister circuits give us pause. For one, the Third and Ninth Circuits said only in dicta that the alleged unfulfilled promises in those cases would trigger a claim for ineffectiveness. Both courts eventually concluded that no such promises were even made. *See Saesee*, 725 F.3d at 1050; *McAleese*, 1 F.3d at 167. And we agree with the government that the other cases Udo cites are readily distinguishable from Udo's because each involved a close call whether the evidence supported a guilty verdict. *See Hampton*, 347 F.3d at 237 (noting that the district court found the prosecution's case "far from unassailable"); *Ouber*, 293 F.3d at

33 (calling the case "exceedingly close"). This case was not a close call. The strength of the government's case against Udo leaves us with no concern that the outcome would have been different had counsel never promised that Udo would testify. We therefore hold that counsel's unfulfilled promise did not amount to ineffective assistance of counsel because Udo suffered no prejudice. *See Strickland*, 466 U.S. at 694.

Udo also alleges his counsel was ineffective for agreeing to a jury instruction that explained the professional and legal responsibilities of tax preparers. The court told the jury that, as a professional, Udo had a duty to "exercise due diligence" that the returns he prepared were accurate and that IRS regulations required him to "make appropriate inquiries" into the facts supporting a deduction. Udo argues on appeal that those instructions might have allowed the jury to convict him for failing to investigate his clients' returns, which is not a crime, instead of willfully preparing false returns, which is.

But reading the instructions as a whole, *see Hurt*, 527 F.3d at 1351, Udo's argument is farfetched. It was only after the court plainly instructed the jury that it must find that Udo willfully prepared false returns that the court provided its explanation of some background principles it thought would be helpful to a jury that might not be versed in the professional and legal standards required of those who prepare tax returns for others. We cannot see how these instructions might have confused the jury. In fact, the court drove home the point that there was a clear distinction between the criminal charges Udo was facing and the standards of his profession:

> [The court is] now going to give you further instructions on some pertinent tax principles. [The court] remind[s] you, this is a criminal case, not a civil case or an audit concerned with the collection of tax. Thus, [the court has]

previously described for each charge that the government must prove each of the elements beyond a reasonable doubt.

Trial Tr. 30 (Aug. 6, 2012).

More fundamentally, Udo's argument mistakenly assumes the jury convicted him not because of the mountain of evidence that he violated I.R.C. § 7206(2) but because he may have breached professional standards. After all, he would not have suffered any prejudice if the jury convicted him of the crimes he was accused of committing. To reach the strained conclusion that he was convicted only of violating professional standards and not the law, Udo would need to show a reasonable probability both that the jury thought his clients were lying when they testified that they never asked him to claim unreimbursed expenses—even though Udo offered no such evidence—and that the jury found the videotape unpersuasive. We find this version of events too speculative to raise a reasonable probability of a different outcome.

Udo raises another concern with the court's explanation about the duties of tax preparers. By agreeing to this instruction, Udo argues, his trial counsel relieved the government of its burden to prove that Udo acted willfully and instead put the defense to the task of proving that his actions were innocent mistakes. Udo points to a statement by the prosecutor in her closing argument: "We're talking about Mr. Udo who is a CPA, who prepares tax returns, must exercise due diligence in the accurate preparation and filing of tax returns to the IRS. That's the jury instruction. That's the law. He knows. He is deemed to know." Trial Tr. 88 (Aug. 6, 2012).

The government concedes that the prosecutor misspoke. The government always bears the burden of proving all

elements of a crime, including intent. By telling the jury that Udo "is deemed to know" the law, the prosecutor incorrectly suggested that Udo bore the burden of proving he did not. The government calls this a mere slip-up during closing argument. More importantly, the government argues, was the court's instruction to the jury:

> Every defendant in a criminal case is presumed to be innocent. This presumption of innocence remains with the defendant throughout the trial unless and until the government has proven he is guilty beyond a reasonable doubt. This burden never shifts throughout the trial. The law does not require the defendant to prove his innocence or to produce any evidence at all.

Trial Tr. 15-16 (Aug. 6, 2012). The court further instructed the jury that "[t]he government has the burden of proving the defendant guilty beyond a reasonable doubt as to each element of the crime charged," *id*. at 16; "[t]he statements, arguments and questions of the lawyers are not evidence; they are only intended to assist you in understanding the evidence," *id*. at 23; "the prosecution must prove that the defendant knew the deductions and credits were false or fraudulent beyond a reasonable doubt," *id*. at 27.

We agree with the government that these instructions clarified any confusion the prosecutor's misstatement may have caused. This court has previously held that "[t]he jury is presumed to follow the instructions" even in the face of a misstatement of the law by a prosecutor. *United States v. Hall*, 610 F.3d 727, 741-42 (D.C. Cir. 2010). We apply the same presumption here. The court's instructions were crystal clear: The government bore the sole burden of proving beyond a reasonable doubt that Udo knew his clients' returns were materially false. Again, we hold that Udo suffered no prejudice

because any alleged ineffectiveness by his counsel did not "undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

Next, Udo claims his counsel erred in failing to challenge the court's restitution calculation. We discuss the lawfulness of the restitution order below, but for purposes of Udo's ineffectiveness argument we point out the obvious. Counsel's failure to object to the restitution order could not have affected the outcome of Udo's trial because it occurred after the verdict. Only sentencing remained.

Finally, Udo argues that the cumulative effect of his counsel's errors merits reversal of his conviction. Again, we disagree. As we have repeated throughout, the evidence against Udo was overwhelming. None of the errors he alleges could have overcome that evidence in isolation, and there is nothing about considering them in the aggregate that changes the strength of the government's case. We see no reasonable probability that the outcome of the trial would have been different had Udo's counsel done all that Udo now argues he should have. *See Strickland,* 466 U.S. at 694.

IV

Udo challenges the method the government used to calculate the loss that the court adopted in its restitution order. Because Udo's counsel failed to object to the restitution order at trial, we review Udo's claim for plain error. *See* FED. R. CRIM. P. 52(b). Under this standard, he must demonstrate on appeal not only that an error occurred, but that it was plain, affected his substantial rights, and "seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings." *United States v. Olano*, 507 U.S. 725, 732 (1993) (internal citation and quotation marks omitted). The

government concedes that the court plainly erred in calculating the restitution order, and we agree.

Restitution is exclusively a creature of statute, *see United States v. Moore*, 703 F.3d 562, 573 (D.C. Cir. 2012), and comes with important restrictions. *See* 18 U.S.C. § 3556. Relevant here, a court may order restitution to the victim of an offense for which the defendant was convicted. *See* 18 U.S.C. § 3583(d); *id*. § 3563(b)(2); *id*. § 3556; *id*. § 3663(a)(1)(A); *id*. § 3663A(a)(1). But the relevant statutes do not even contemplate—much less expressly allow—that a court may order a defendant to pay restitution for offenses related to, but distinct from, the offenses of conviction. *See Hughey v. United States*, 495 U.S. 411, 413 (1990) (holding that Congress "authorize[d] an award of restitution only for the loss caused by the specific conduct that is the basis of the offense of conviction").[4] A number of our sister circuits have held that courts may order restitution as a condition of supervised release, but only to compensate for the loss arising from the conduct for which the defendant was convicted. *See, e.g.*, *United States v. Freeman*, 741 F.3d 426, 433-34 (4th Cir. 2014) (collecting cases).

The district court below ordered Udo to pay restitution as a condition of supervised release, invoking the authority of 18 U.S.C. § 3583(d).[5] The government's post-verdict

---

[4] Although 18 U.S.C. § 3663A postdates *Hughey,* nothing in the text of the statute suggests that Congress intended to depart from the Court's holding in *Hughey*.

[5] 18 U.S.C. § 3583(d) allows federal courts to order certain "discretionary condition[s] of probation," including a court order requiring the defendant to pay restitution to victim(s) of the offense. *See id*. (cross-referencing conditions listed in 18 U.S.C.

sentencing memorandum freely admitted that its restitution calculation was "derived from convicted *and uncharged relevant conduct*." J.A. 36 (emphasis added). Even so, the court ordered Udo to pay $262,966 in restitution. This total encompassed not just the loss resulting from the twenty-five false returns Udo was convicted of helping prepare, but also the losses generated from more than a dozen other returns that Udo was not convicted of helping prepare. The government concedes this was in error. The court exceeded its remedial authority by ordering Udo to pay restitution for uncharged conduct. The loss resulting only from the false returns that led to Udo's convictions totaled just $74,047.

Udo also alleges that the court failed to credit a payment made by one of his clients that should offset his total and requests that, on remand, the government provide a full explanation of how it calculated the figures it provided to the district court. At oral argument, the government expressed a willingness to provide that information on remand, along with any information about updated payments from Udo's clients.

We agree with the parties that there was an error and that it was plain. Consistent with two of our sister circuits,[6] we hold that ordering a defendant to pay more in restitution than the amount resulting from the loss he caused both affects his substantial rights and "seriously affect[s] the fairness" of the proceedings. *Olano*, 507 U.S. at 732. Because the district court plainly erred in calculating Udo's restitution order, and in light of the government's concession, we vacate the order and remand for the court to reconsider that aspect of his sentence.

§ 3563(b)(2)); *id.* § 3563(b) (allowing the court to require restitution as a condition of probation under 18 U.S.C. § 3556).

[6] *See United States v. Davis*, 714 F.3d 809, 816 (4th Cir. 2013); *United States v. Austin*, 479 F.3d 363, 373 (5th Cir. 2007).

17

V

For the foregoing reasons, we affirm Udo's conviction. We vacate the district court's restitution order and remand the case for the court to reconsider the restitution order in a manner consistent with this opinion.