# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued April 3, 2018         Decided June 8, 2018

No. 14-3003

UNITED STATES OF AMERICA,
APPELLEE

v.

BENJAMIN BRANDON GREY,
APPELLANT

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:13-cr-00031-1)

---

*Tony Axam Jr.*, Assistant Federal Public Defender, argued the cause for appellant. With him on the briefs were *A.J. Kramer*, Federal Public Defender, and *Rosanna M. Taormina*, Assistant Federal Public Defender.

*Christopher R. Howland*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Jessie K. Liu*, U.S. Attorney, and *Elizabeth Trosman* and *Jonathan P. Hooks*, Assistant U.S. Attorneys.

Before: TATEL, SRINIVASAN, and MILLETT, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* TATEL.

TATEL, *Circuit Judge*: Want to buy a luxury car at a great price? Appellant Benjamin Brandon Grey had a deal for you: go to a bank, take out a loan (or several), hand him the money, and you get your car. But Grey's offer had a serious hitch: he kept the money and you never got a car, for which a jury convicted him of twenty-one counts of bank fraud and other offenses. On appeal, Grey challenges the district court's admission of (1) evidence of a judgment in a related civil case, (2) evidence of uncharged acts under Federal Rule of Evidence 404(b), and (3) evidence of the financial damage that Grey's scheme inflicted on his would-be customers. Grey also argues that his trial counsel's representation was ineffective. For the reasons that follow, we affirm his conviction and deny his ineffective-assistance claim.

**I.**

At Grey's four-day jury trial, the government offered the following evidence:

Hector Williams Jr. testified that Grey, whom he had met through a mutual acquaintance, claimed to be a car dealer able to buy luxury cars at low prices, and that he could get Williams a good deal on a BMW. Following several weeks of discussion, Grey claimed to have purchased a BMW and gave Williams a buyer's order for the car. Order in hand, Williams took out a $35,000 loan from his credit union, and gave Grey the money, which Grey deposited in his bank account. Grey never delivered a car. After repeatedly contacting Grey, who offered a variety of excuses, Williams filed a police report and sued Grey in D.C. Superior Court. Grey failed to appear, and the court entered a default judgment. Williams testified that because he was unable to make payments on his loan, his credit

union "end[ed] up suing [him]" and "won." Trial Tr. 267 (Sept. 16, 2013); *see id.* at 219–67.

Another witness, Jennifer Bertelsen, testified that Grey, with whom she was romantically involved, claimed to own Planet Cars, a business through which he bought cars and resold them at a profit. He urged her to take out loans, which he would use to buy cars to resell, and then split the profits with her. Though "skeptical," Bertelsen testified that she was "in love so [she] trusted him" and took out three loans from three different banks for some $30,000 each and then signed the three checks over to Grey. Trial Tr. 116 (Sept. 17, 2013). Grey deposited the money in his bank account and gave Bertelsen buyer's orders describing the vehicles she was ostensibly purchasing through Planet Cars. Bertelsen's relationship with Grey ended, and she never received any money. At trial, Bertelsen testified that she was forced into bankruptcy due to her inability to repay the loans. *See id.* at 102–70.

Ronny Fernandez, a high school friend of Grey's, testified that Grey told him about Planet Cars, offered to sell him a BMW, and gave him a document purporting to be the car's title and listing Planet Cars as the owner. In response to Fernandez's "concern[]" about the transaction, which would involve taking out a loan from a credit union, Grey explained that "because it's a federal credit union . . . if he didn't give [Fernandez] the car or [the] money . . . it would be a federal offense." Trial Tr. 104–05 (Sept. 18, 2013). Reassured, Fernandez took out a $30,000 loan and gave the money to Grey, who deposited it in his bank account. Grey neither delivered a car nor refunded the money. Fernandez sued Grey, but dropped the suit when Grey warned that "if [Fernandez] take[s] him to court, it's a federal offense and [Grey will] be in jail and then he won't be able to give [Fernandez] [his] money back." *Id.* at 116. Grey then offered Fernandez a second deal: if he allowed Grey to list him

as a founder of GreyMaxx, another company through which Grey was seeking to buy and sell cars, he would return the money. Fernandez agreed, but Grey neither involved him in GreyMaxx nor repaid the money. Fernandez attempted to pay off his loan to preserve his credit but was ultimately unable to do so, leading his bank to increase the interest rate. Fernandez testified that his debt "put [him] on edge" and that he "ended up losing [his] job being so stressed out." *Id.* at 118; *see id.* at 93–120.

William Hill, who had met Grey through a mutual friend, testified that Grey also offered him an opportunity to invest in GreyMaxx. Hill agreed and gave Grey $34,000, after which communications with Grey tapered off and ultimately ended. Grey never returned the money. *See id.* at 193–216.

The government called seven employees of the banks and credit unions where the relevant transactions occurred. They described each of the loans and the corresponding deposits in Grey's bank accounts. Together with this testimony, the government introduced into evidence the associated loan applications, security agreements, checks, deposit slips, and bank statements. *See, e.g.*, Trial Tr. 57–67 (Sept. 17, 2013) (Williams loan and associated documentation).

Two government witnesses provided evidence of uncharged acts under Federal Rule of Evidence 404(b). Although the government had sought to introduce five such acts, at a pretrial hearing, the district court, concerned that admitting too many acts would be "overkill" and "prejudic[ial]," rejected two and then allowed the government to "pick two" from the remaining three. Hearing Tr. 10 (July 23, 2013). One of the witnesses the government selected, Waleed Esbaitah, testified that he gave Grey $1,500 to buy a car. Grey neither delivered a car nor returned the money. *See*

Trial Tr. 32–42 (Sept. 19, 2013). The other witness, Ralph Kolius, a sales manager at Chevy Chase Nissan, testified that the dealership had to repossess a car Grey had purchased when it discovered that Grey's check was drawn on a closed Planet Cars bank account. *See* Trial Tr. 167–81 (Sept. 18, 2013). The court cautioned the jury about the Rule 404(b) evidence's "limited purpose" three times during trial—after opening statements and after each witness's testimony—and then again in its instructions to the jury. Trial Tr. 207 (Sept. 16, 2013); Trial Tr. 182–83 (Sept. 18, 2013); Trial Tr. 81–82 (Sept. 19, 2013).

Grey presented no evidence in defense, and the jury convicted him on twenty-one counts of wire fraud, bank fraud, false statement on a loan application, and first-degree fraud. *See* 18 U.S.C. § 1343 (wire fraud); *id.* § 1344 (bank fraud); *id.* § 1014 (false statement); D.C. Code § 22-3221(a) (first-degree fraud). The district court sentenced him to 102 months' (eight-and-a-half years') imprisonment and 60 months' supervised release.

## II.

Grey's strongest challenge is to the district court's admission of Williams' testimony about the default judgment, and so we begin there. Because Grey's counsel failed to object, we review for plain error, which means Grey can prevail only if we find "(1) an error, (2) that is clear or obvious, (3) that affected the outcome of the district court proceedings, and (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. King-Gore*, 875 F.3d 1141, 1144 (D.C. Cir. 2017) (citing *Puckett v. United States*, 556 U.S. 129, 135 (2009)).

Grey argues that Williams' testimony was hearsay and "both irrelevant and highly prejudicial." Appellant's Br. 24.

Although our court has yet to rule on the issue, numerous courts have held that civil judgments introduced in subsequent cases for the truth of their underlying facts are inadmissible hearsay. *See, e.g.*, *United States v. Sine*, 493 F.3d 1021, 1036 (9th Cir. 2007) ("A court judgment is hearsay 'to the extent that it is offered to prove the truth of the matters asserted in the judgment.'" (quoting *United States v. Boulware*, 384 F.3d 794, 806 (9th Cir. 2004))); *see also, e.g.*, *Greycas, Inc. v. Proud*, 826 F.2d 1560, 1567 (7th Cir. 1987) (same); *State v. Johnson*, 381 S.E.2d 732, 733 (S.C. 1989) (same). Three major evidence treatises agree. *See* 5 Wigmore on Evidence § 1671a (Chadbourn rev. ed. 1974) ("[A] *judgment in another cause*, finding a fact now in issue, is ordinarily not receivable."); *see also* 2 McCormick on Evidence § 298 (7th ed. 2016) (same); 5 Weinstein's Federal Evidence § 803.25 (2d ed. 2018) (same). Moreover, neither of the two narrow hearsay exceptions that allow admission of certain types of judgments applies here. *See* Fed. R. Evid. 803(22) (excepting certain judgments of criminal convictions); Fed R. Evid. 803(23) (excepting certain judgments "admitted to prove a matter of personal, family, or general history, or boundaries"). And the government's purported nonhearsay rationale for introducing this evidence— that it served to explain Williams' actions and support his credibility, Appellee's Br. 37 n.8—does not hold water. The default judgment was not entered until after Williams' dealings with Grey, and any credibility-related benefit arises solely from the facts underlying the judgment (*a.k.a.* hearsay). *See* Fed. R. Evid. 801(c) (defining hearsay as out-of-court statements "offer[ed] in evidence to prove the truth of the matter asserted").

Not only was the evidence of the Williams judgment inadmissible hearsay, its probative value was "substantially outweighed" by its prejudicial impact. Fed. R. Evid. 403. Any relevant inferences about Williams' actions or his relationship

with Grey arise from the fact that he sued Grey; introducing evidence of the judgment provided no incremental probative benefit other than to suggest that Grey was at fault. Against this meager probative value, the evidence was highly prejudicial. "A practical reason for denying [judgments] evidentiary effect," the Seventh Circuit has explained, is "the difficulty of weighing a judgment, considered as evidence, against whatever contrary evidence a party . . . might want to present," especially "for a jury, which is apt to give exaggerated weight to a judgment." *Greycas, Inc.*, 826 F.2d at 1567; *see also* 2 McCormick on Evidence § 298 (describing "the danger of undue prejudice" from admitting prior judgments because "juries may . . . giv[e] the judgment binding effect even if this is contrary to substantive law"). Here, the civil judgment and the criminal charges involved virtually identical conduct, exacerbating the risk that the jury would improperly rely on the judgment. The government even encouraged such reliance, calling attention to the judgment in its opening statement: "[S]omeone who claim[ed] to be [Grey]'s cousin" told Williams, "[i]f you have a problem with something that [Grey] did, I suggest you take it up in a court of law." Trial Tr. 187 (Sept. 16, 2013). "Mr. Williams," the prosecutor continued, "does exactly that. He sues [Grey] in DC Superior Court for $35,444. [Grey] never shows up to court. Mr. Williams gets a default judgment against [Grey]." *Id.* The court, moreover, offered the jury no clarifying or limiting instruction that could have perhaps mitigated this clear prejudice, such as an explanation of the differing burdens in civil and criminal proceedings or the nature of default judgments.

Admission of this evidence was thus "a legal error that was . . . 'plain' (a term that is synonymous with 'clear' or 'obvious')." *United States v. Brown*, 508 F.3d 1066, 1071 (D.C. Cir. 2007) (quoting *United States v. Sullivan*, 451 F.3d 884, 892 (D.C. Cir. 2006)). In so concluding, we emphasize

that we are not adopting a *per se* rule that any admission of a civil judgment for its truth in a related criminal case is clearly erroneous. We conclude only that the admission of Williams' testimony was plain error under the circumstances of this particular case, including the government's failure to offer a nonhearsay basis for admission, the substantial overlap between the facts of the civil judgment and the instant charges, the government's calling attention to the judgment in its opening statement, and the trial court's failure to offer any limiting instruction.

We shall not, however, reverse Grey's conviction, as he has failed to meet the other requirements of the plain error standard, namely that the error "affected the outcome of the [trial], and . . . seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings." *King-Gore*, 875 F.3d at 1144. This was not a close case. The government's four principal witnesses described Grey's scheme in detail. Two witnesses—Williams and Fernandez—testified that, at Grey's insistence, they took out car loans and gave him the money, but neither got a car. Another witness, Bertelsen, testified that Grey offered her a share of his resale profits, which she never received. Fernandez and another witness, Hill, testified that Grey also offered them investment opportunities, in their case in GreyMaxx, and that they, too, were left empty-handed. According to Fernandez, Grey twice acknowledged that his conduct would constitute a "federal offense." Each fraudulent transaction, moreover, was confirmed by bank-employee witnesses and bank records. Taken together, all of this evidence, largely unchallenged by the defense and excluding Williams' default judgment (and, for good measure, the other challenged evidence discussed below), is more than enough to demonstrate that any error in admitting evidence of the judgment, even if clear, was insufficiently prejudicial to merit reversal.

**III.**

Grey next challenges the district court's admission of evidence under Federal Rule of Evidence 404(b). *See* Fed. R. Evid. 404(b) (permitting evidence of a "crime, wrong, or other act"). Because Grey objected to the admission of the evidence, our review is for abuse of discretion. *See United States v. Pole*, 741 F.3d 120, 124 (D.C. Cir. 2013) ("When a defendant has preserved his objection to a district court's evidentiary ruling, we review that ruling for abuse of discretion.").

Grey first argues that Waleed Esbaitah's testimony that he gave Grey money to buy a car and that Grey neither delivered a car nor returned the money was needlessly cumulative and unfairly prejudicial. The government responds—correctly, in our view—that it was obligated to prove Grey's specific intent to defraud and the fact that he engaged in similar conduct around the same time as the charged conduct was probative of his state of mind. *See Huddleston v. United States*, 485 U.S. 681, 685 (1988) ("Extrinsic acts evidence may be critical to the establishment of the truth as to a disputed issue, especially when that issue involves the actor's state of mind and the only means of ascertaining that mental state is by drawing inferences from conduct."). Although the similarity of this Rule 404(b) evidence to the charged conduct risked rendering its introduction needlessly cumulative, the district court acted well within its discretion when it concluded that the testimony's probative value sufficiently counterbalanced the danger of its cumulativeness, especially given the court's careful policing of this line at the pretrial hearing, where it restricted the government to introducing only two acts.

Next, Grey argues that Ralph Kolius' testimony that Grey purchased a car from Chevy Chase Nissan using a check drawn on a closed Planet Cars account involved "an altogether different scheme" and thus served no permissible evidentiary

purpose. Appellant's Br. 20. This is a closer call: the schemes are different, as the charged conduct did not involve the passing of bad checks; the potential prejudice associated with passing a bad check is significant; and the government's explanation of the evidence's probative value—that it tends to show how Grey used his business entities, and Planet Cars in particular, for automobile-related fraud—offers but a limited offset against its prejudicial potential. Any error in admitting this evidence, however, was harmless and thus does not require reversal. *See United States v. Linares*, 367 F.3d 941, 952 (D.C. Cir. 2004) (explaining that non-constitutional error is harmless "unless it had a 'substantial and injurious effect or influence in determining the jury's verdict'" (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946))). Given the overwhelming and detailed evidence of Grey's fraud, Kolius' testimony "was neither so dramatic nor compelling as to rivet the jury's attention," it "consumed a small part of the trial," and the district court, by offering multiple limiting instructions about the permissible use of Rule 404(b) evidence, "took caution to guard the space between the permissible and impermissible inferences," rendering any error harmless. *United States v. Brown*, 597 F.3d 399, 405 (D.C. Cir. 2010) (quoting *United States v. Mitchell*, 49 F.3d 769, 777 (D.C. Cir. 1995)).

Grey suggests that the district court acted arbitrarily by "simply instruct[ing]" the government to pick two acts to introduce. Appellant's Br. 20. Simply? Quite to the contrary, the district court carefully questioned the parties about the evidence over several transcript pages, explained its concern that introducing the government's five proposed acts was "overkill," and ultimately limited the government to introducing just two acts from a narrowed set of three. *See* Hearing Tr. 7–12 (July 23, 2013). Given its concern that "at some point . . . the prejudice far outweighs any probativeness," the court acted well within its discretion when, having

thoroughly considered the options, it drew the line at two. *Id.* at 10.

## IV.

This brings us to Grey's challenge to the admission of testimony about the adverse financial consequences suffered by Williams, Bertelsen, and Fernandez. Williams testified that his credit union sued him when he was unable to make the payments on his loan. Bertelsen testified that she filed for bankruptcy because she was unable to afford the payments on hers. Fernandez went further: he testified that his inability to keep up with his loan payments "stressed [him] out" and "put [him] on edge," ultimately causing him to "los[e] [his] job" because he was "so stressed out" and leading his bank to increase his interest rate. Trial Tr. 118 (Sept. 18, 2013). According to Grey, the sole purpose of this evidence "was to highlight the suffering of the victims and to generate feelings of sympathy for them and outrage against [Grey]." Appellant's Br. 28.

Grey's trial counsel twice objected to the introduction of this evidence. The court sustained one objection on relevance grounds at the tail end of Williams' testimony, Trial Tr. 272 (Sept. 16, 2013), and overruled an objection to Fernandez's testimony that his inability to repay his loan "put [him] on edge," Trial Tr. 118 (Sept. 18, 2013). The parties dispute the timing and adequacy of these objections and, accordingly, the appropriate standard for our review. *See Pole*, 741 F.3d at 124 (explaining that we review for abuse of discretion "[w]hen a defendant has preserved his objection" and that we "review unpreserved objections for plain error"). We need not resolve that issue, however, for any errors in admitting this testimony were harmless. *See id.* ("Either way, if we determine that the district court has erred in excluding particular evidence, we will

reverse the conviction on that basis only if the error was not harmless.").

In response to Grey's argument that the evidence served no legitimate purpose, the government offers a theory of its relevance, namely that "[Grey's] failure to take any corrective action, or to terminate his schemes, despite the significant harms suffered by his victims, reflects [his] intent to defraud." Appellee's Br. 43. Although "proof that someone was actually victimized by the fraud is good evidence of the schemer's intent," *United States v. Reid*, 533 F.2d 1255, 1264 n.34 (D.C. Cir. 1976) (quoting *United States v. Regent Office Supply Co.*, 421 F.2d 1174, 1181 (2d Cir. 1970)), the extent of the testimony here—and, in particular, Fernandez's description of the emotional effects of Grey's actions—outstrips any potential probative purpose, especially absent proof that Grey was aware of the consequences of his scheme. Moreover, this testimony—again, especially Fernandez's—risked prejudicing the jury by, as Grey argues, "generat[ing] feelings of sympathy for [his victims]." Appellant's Br. 28.

Whether the district court abused its discretion in concluding that the risk of prejudice did not "substantially outweigh[]" any probative value, however, is of no moment because any error was harmless. Fed. R. Evid. 403. The testimony was brief, it played a minor role in the government's case, and its prejudicial potential was limited by the straightforward way in which most of it (again, excepting Fernandez's outburst) was presented. Most importantly, as we have already explained, the evidence against Grey was overwhelming, confirming that the challenged testimony, even if admitted in error, had no "substantial and injurious effect or influence in determining the jury's verdict." *Linares*, 367 F.3d at 952 (quoting *Kotteakos*, 328 U.S. at 776).

## V.

We can quickly dispose of Grey's two remaining arguments.

First, he argues that even if he fails to prevail on any individual issue, the "cumulative effect" of his challenges merits reversal. Appellant's Br. 31. As explained above, however, the district court made only one error—admitting evidence of the default judgment. To be sure, the admission of Kolius' Rule 404(b) testimony and certain of the financial-impact evidence might also have been error, but their effect was minimal and any prejudice was mitigated in the case of the Rule 404(b) evidence by the court's limiting instructions. Given this, and given the overwhelming weight of evidence against Grey, we reject his "cumulative effect" argument. *See Brown*, 508 F.3d at 1076 (concluding that cumulative effect did not merit reversal where "the Government's case was strong and . . . the District Court's instructions to the jury mitigated any harm").

Second, Grey raises, for the first time on appeal, a claim of ineffective assistance of counsel. Although our "general practice is to remand to the district court for an evidentiary hearing," we need not do so where "it is clear from the record that counsel . . . was not ineffective." *United States v. Weaver*, 281 F.3d 228, 233–34 (D.C. Cir. 2002). This is just such a case. Grey's ineffectiveness claim rests solely on defense counsel's "fail[ure] to object" to admission of the Williams judgment and certain of the financial-impact evidence. Appellant's Br. 32–33. We have no need to consider whether "counsel's representation fell below an objective standard of reasonableness" because, given the extensive evidence of Grey's guilt, we think it obvious that counsel's errors, if any, were not "so serious as to deprive [Grey] of a fair trial." *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984); *see*

*United States v. Saro*, 24 F.3d 283, 287 (D.C. Cir. 1994) ("[T]he *Strickland* formulation of 'prejudice' comes quite close to what we have required in plain-error cases.").

## VI.

For the reasons given above, and having considered and rejected Grey's *pro se* argument that "[he] was arrested . . . without service of process," Pro Se Br. 2, we affirm his conviction and deny his claim of ineffective assistance.

*So ordered.*