# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued March 10, 2020          Decided June 19, 2020

No. 18-3081

UNITED STATES OF AMERICA,
APPELLEE

v.

MICHAEL SANG HAN,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:15-cr-00142-1)

*John August Boeglin*, appointed by the court, argued the cause for appellant. With him on the briefs were *Kevin King*, *Michael J. Gaffney*, and *Tarek J. Austin*, all appointed by the court.

*Elissa Hart-Mahan*, Attorney, U.S. Department of Justice, argued the cause for appellee. With her on the brief were *Alexander P. Robbins*, Attorney, and *Jessie K. Liu*, U.S. Attorney at the time the brief was filed. *Elizabeth Trosman,* Assistant U.S. Attorney, entered an appearance.

Before: HENDERSON, GARLAND and MILLETT, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GARLAND.

GARLAND, *Circuit Judge*:  After a seven-day jury trial, defendant Michael Han was convicted of tax evasion in connection with his 2010 and 2011 individual tax returns.  As chief executive of a recycling technology company, Han solicited millions of dollars from investors Frank Carlucci and James Russell.  In the tax years charged, Han spent much of that company money on personal expenses.  He also used it to pay down debt he owed the company for spending yet more company money on himself between 2004 and 2009.  Han failed to report as income the corporate funds he converted to his personal benefit.

On appeal, Han challenges several rulings by the district court and the conduct of both the prosecution and his own counsel.  We reject each challenge and affirm the judgment of the district court.

I

Han was the founder and chief executive of Envion, Inc., a recycling technology company that never sold any recycling technology and never earned any revenue.  From 2004 to 2009, Han spent millions in investor funds on personal expenses, including Porsche sports cars.  *See* Appendix (A.) 487-503.  Neither Han nor Envion filed tax returns for any of those years until 2010, when prompted by an IRS notice about the delinquency.  As Han turned to preparing his and the company's returns, he learned from his accountants that his personal expenditures made with corporate funds could potentially be treated either as "taxable compensation" or as "a loan [from Envion] to the shareholder[, Han]."  Supplemental Appendix (S.A.) 130 (accountant testimony).  If treated as a loan, the money would not be taxed, but Han would have to repay it in the

future. *Id.* He opted to treat the personal expenditures as shareholder loans.

At roughly the same time, Han solicited a further $22 million from two of his existing investors, Frank Carlucci and James Russell. Although Carlucci and Russell thought they were providing the funds to Envion, *see* S.A. 73, 114-15, Han instead had them wired to his personal accounts, *see* S.A. 159, 165. He then used those funds to pay down his shareholder loan balance and make further personal expenditures, including the purchase of a Ferrari and renovations on his Palm Beach home. *See* S.A. 175, 198. In light of Han's failure to report his conversion of corporate funds as income, the IRS ultimately concluded that Han had avoided paying $1,133,784 in taxes in 2010 and $3,822,243 in 2011.

Han was tried for tax evasion in connection with his 2010 and 2011 personal tax returns. Although Han did not himself testify, the heart of his defense was the claim that he had a good-faith belief that the funds from Carlucci and Russell were personal loans, which would not have been taxable. The jury convicted Han on two counts of tax evasion, and the district court sentenced him to 48 months' imprisonment.

On appeal, Han mounts four challenges to his convictions. He argues that: (1) the district court admitted evidence that was irrelevant and improperly showed prior "bad acts"; (2) the government improperly appealed to "class prejudice" throughout the trial; (3) the district court erred in declining to give Han's preferred theory-of-the-defense instruction; and (4) his trial counsel was ineffective. We address those challenges below.

4

II

Han's principal contention is that the court wrongly permitted the government to introduce evidence that was not relevant to the 2010 and 2011 tax evasion charges, in violation of Federal Rule of Evidence 402. *See* FED. R. EVID. 402 ("Irrelevant evidence is not admissible."). Han further maintains that the evidence was instead introduced to show prior bad conduct, in order to prove his bad character and a propensity to act in accordance with that character, in violation of Rule 404(b). *See* FED. R. EVID. 404(b)(1) ("Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."). "We review a district court's evidentiary rulings for abuse of discretion," *United States v. Alexander*, 331 F.3d 116, 121 (D.C. Cir. 2003), and we find none.

1. We start with the evidence of Han's expenditures from 2004 to 2009 and with his personal tax returns for those years. Han maintains that there was no reason to introduce evidence of any of that past conduct. To show tax evasion in 2010 and 2011, he says, it would have sufficed to show that he converted corporate funds to personal use in 2010 and 2011. To the extent that Han used corporate funds to pay down his debt to Envion for *earlier* personal spending, he argues, the government did not need to demonstrate how that debt arose. As he says, it would have been unlawful for him to fail to report the repayments regardless of whether he had previously used Envion's money on charitable donations or on flashy cars.

This argument is true enough -- as far as the government's obligation to show the existence of a tax deficiency goes. But it ignores the issue of Han's intent. In a tax-evasion case, the government's burden on that issue is steep. The prosecution

was required to demonstrate beyond a reasonable doubt that Han acted *willfully* -- "that the law imposed a duty on the defendant, that the defendant knew of this duty, and that he voluntarily and intentionally violated that duty." *Cheek v. United States*, 498 U.S. 192, 201 (1991); *see United States v. Khanu*, 662 F.3d 1226, 1229 (D.C. Cir. 2011).

The evidence in controversy was central to that issue. Although Han makes much of the fact that the other returns introduced were for "earlier" tax years, he did not file them until 2010 and 2011 -- roughly contemporaneously with the conduct charged. *Compare, e.g.*, A. 436 (Han's 2006 tax return, filed June 2, 2011), *with* A. 368 (Han's 2010 return, filed November 14, 2011). And it was in the process of characterizing his 2004-2009 expenditures for those other returns, the government argued, that Han learned he could not defensibly characterize splurges on flashy cars (and other items) as business expenditures: It gave him "sort of a tutorial, [an] education session." S.A. 230 (government's closing argument). Han learned that he would have to find a different characterization if he wanted to avoid paying taxes on that and similar spending going forward. In other words, he developed "knowledge of [his] tax obligations" and began willfully planning to defy them. S.A. 231 (government's closing argument).

Accordingly, the 2004-09 evidence was both relevant to the 2010-11 charges under Rule 402 and admissible under Rule 404(b). *See* FED. R. EVID. 404(b)(2) (providing that evidence of prior crimes, wrongs, or other acts "may be admissible for another purpose, such as proving . . . intent, . . . plan, [and] knowledge"). As we have explained, "[i]ntent and knowledge are . . . well-established non-propensity purposes for admitting

evidence of prior crimes or acts." *United States v. Bowie*, 232 F.3d 923, 930 (D.C. Cir. 2000).[1]

Han further insists that, even if the 2004-09 evidence were relevant and admissible, its probative value was "substantially outweighed by the danger of . . . unfair prejudice." FED. R. EVID. 403. Again, we may overturn a district court's conclusion on that ground only if we find an abuse of discretion. *United States v. Gartmon*, 146 F.3d 1015, 1020 (D.C. Cir. 1998). We find nothing even close. To the contrary, the district court "took the appropriate steps to minimize the danger that the jury would use the 404(b) evidence for an improper purpose," *United States v. Pettiford*, 517 F.3d 584, 590 (D.C. Cir. 2008), warning the government not to "linger on the more salacious details," A. 88, and issuing an appropriate precautionary instruction, A. 328.

2. Han also charges that the court erred in admitting evidence that he made misrepresentations to investors about Envion's economic prospects. As we noted above, Han's principal defense was the claim that Carlucci and Russell had loaned $22 million to him personally, rather than to Envion. Han agrees, of course, that the government was entitled to dispute that characterization with evidence of how Carlucci and Russell thought the funds would be used. But, he says, "[w]hile the representations that Carlucci and Russell relied on in wiring money to Mr. Han were relevant, evidence that these statements were *mis*representations was not." Han Br. 28.

---

[1] The district court did not address the government's argument that the evidence was not covered by Rule 404(b) at all because it was "intrinsic" to the charged offenses. *See Bowie*, 232 F.3d at 929. Because we conclude that the evidence was admissible under Rule 404(b) in any event, we also have no need to address whether it was intrinsic.

We disagree. Whether a borrower has the intent and ability to repay a purported loan is a factor in judging whether the transaction is in fact a loan for tax purposes. *See United States v. Swallow*, 511 F.2d 514, 519 (10th Cir. 1975) (holding that "loans obtained in bad faith and without an intent to repay them" are taxable income); *see also, e.g.*, *United States v. McGinn*, 787 F.3d 116, 126-27 (2d Cir. 2015); *Welch v. Comm'r*, 204 F.3d 1228, 1230 (9th Cir. 2000). Here, the government introduced the challenged evidence to show that Han knew the deals he told the investors would be the source of their repayment would never be consummated -- and hence that the investors' money could not have constituted loans to Han because he had no intent or ability to repay them. A. 204-05; *see also* A. 205 (government proffer that Han "did not have any independent money").

Finally, we note that the district court once again took exemplary care to insist that testimony on this subject be "brief[]" and "very tailored," and "to limit [how the government] could argue" the evidence in its closing. A. 208-09. We therefore conclude that the probative value of this evidence was not outweighed -- substantially or otherwise -- by the danger of unfair prejudice. *See* FED. R. EVID. 403.

## III

As a companion to his argument that the government's evidence was unduly prejudicial, Han alleges that the prosecution engaged in "a persistent appeal to class prejudice" from start to finish. Han. Br. 37 (quoting *United States v. Stahl*, 616 F.2d 30, 33 (2d Cir. 1980)). He emphasizes in particular that the government walked its witnesses through expenditures that it had *excluded* from its calculation of Han's tax liability. Han Br. 35, 36.

But the government stayed within permissible bounds. To establish the existence and extent of the tax deficiency, the prosecution sought to show that the items on which Han spent corporate funds could not possibly be characterized as business expenses. As the district court rightly observed, that necessarily entailed showing the nature of those expenses and arguing, for example, that expensive sports cars could not have been company vehicles. *See* A. 176-77. As for the expenses excluded from the final calculation, the government brought them up to demonstrate where it drew the line -- and how conservatively it did so. As the prosecutor put it in closing, the point was to show that the government's case was "focus[ed] on the things that are pretty clear and obvious," and that the government had not overcharged Han. A. 358.

## IV

Next, Han argues that the district court erred in its handling of his theory-of-the-defense instruction. Included in the defense's proposed instruction was a sentence stating that "Mr. Han believed that the funds he received in 2010 could legally be treated as non-taxable personal loans." A. 276. The district court struck that sentence on the theory that, "since [Han] didn't testify, we don't know what he believed." A. 295-96. The government agrees with Han that this was not a valid basis for refusing to include that statement. U.S. Br. 51 (citing *United States v. Hurt*, 527 F.3d 1347, 1351 (D.C. Cir. 2008)). And although the remainder of the instruction made clear that Han was mounting a defense based on his claimed good-faith belief, it did not include the point that loans are not taxable.

Nonetheless, any error on this front was harmless. "[I]n light of all the circumstances -- the language of the instructions, the arguments of counsel, and the evidence itself" -- there was no real risk of confusion about Han's theory of the case or its

legal basis. *United States v. Lemire*, 720 F.2d 1327, 1339 (D.C. Cir. 1983). The government's expert witness repeatedly testified that personal loans are not taxable. *See* S.A. 187-89, 215-16. The defense's expert witness testified that personal loans are not taxable. *See* A. 263. And as Han's counsel stressed during closing arguments, there was no disagreement on the point. *See* S.A. 270. Moreover, as Han further acknowledged on appeal, "'the incredibility of [a defendant's] claim that he considered the transactions to be loans' can provide a basis to find the failure to instruct harmless." Han Br. 47 (quoting *United States v. Black*, 843 F.2d 1456, 1462 (D.C. Cir. 1988)). On the record of this trial, Han's claim that the $22 million from Carlucci and Russell were personal loans to him, rather than investments in the company, falls well within the "incredible" category.[2]

V

Finally, Han argues that he received ineffective assistance of counsel. The essence of this claim is that his attorney, over the warnings of the district court, opened the door to the otherwise inadmissible fact that Han has been held liable in a civil suit brought by Carlucci. *See* A. 189-196; *cf. United States v. Grey*, 891 F.3d 1054, 1058-60 (D.C. Cir. 2018) (observing

---

[2] *See, e.g.*, S.A. 73 (Russell's testimony that he did not, and would not, have given Han a personal loan); S.A. 114-15 (Marcia Carlucci's testimony that her husband, who was too ill to testify, would not have given Han a $20 million loan); A. 481-85 (global promissory note drafted by Han for Carlucci characterizing Envion as the debtor for the relevant amount); A. 464-69 (global promissory note for Russell characterizing Envion as the debtor for the relevant amount); A. 254-55 (Han's stipulation in a civil suit that Carlucci provided the $20 million "to *Envion*" and that "*Han* [was] not a party to the promissory note" (emphases added)).

that juries are "apt to give exaggerated weight to a judgment," especially where "the civil judgment and the criminal charges involved virtually identical conduct" (internal quotation marks omitted)).  When ineffectiveness "is raised for the first time on appeal, as it is here, our general practice is to remand to the district court for an evidentiary hearing unless it is clear from the record that counsel was or was not ineffective, or that the supposed defect in representation amounted to a strategic choice."  *United States v. Weaver*, 281 F.3d 228, 233-34 (D.C. Cir. 2002).

In this case, we find the issue clear enough to decide for ourselves.  A defendant claiming ineffective assistance must both demonstrate that "counsel's representation fell below an objective standard of reasonableness," *Strickland v. Washington*, 466 U.S. 668, 688 (1984), and show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694.  Counsel's choice here may or may not have been strategic,[3] but we need not resolve that question.  "[G]iven the extensive evidence of [his] guilt," *Grey*, 891 F.3d at 1062, Han has no colorable argument that he was prejudiced by his attorney's decision.  Although we will refrain from reciting the entirety of the government's case to that end, *see, e.g.*, *supra* note 2, we will stress one of the most damning parts:  Han's own stipulation, in his answer to Carlucci's civil suit, that "Mr. Carlucci provided $20 million to *Envion*," and that "*Han* [was] not a party to the promissory note."  A. 516-17 (emphases added).  (Han did not

---

[3] The civil judgment came up in connection with defense counsel's cross-examination of Kyle Harkrader, Han's ex-wife, who testified against him and who had previously settled with Carlucci.  *See* A. 189-96.  As counsel explained at the time, his goal was to suggest that Harkrader might have had reason to deflect responsibility onto Han.  A. 190-91.

object to the admission of this stipulation, only to the fact of the judgment of liability.)  So much for Han's claim that the money Carlucci provided was just a personal loan to Han.

## VI

For the foregoing reasons, the judgment of the district court is

*Affirmed*.