# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued November 17, 2023       Decided March 29, 2024

No. 22-3058

UNITED STATES OF AMERICA,
APPELLEE

v.

JOEY GREEN-REMACHE,
ALSO KNOWN AS JOEY GREEN,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:20-cr-00124-1)

*Stephen C. Leckar*, appointed by the court, argued the cause and filed the briefs for appellant.

*Anne Y. Park*, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were *Matthew M. Graves*, United States Attorney, *Chrisellen R. Kolb*, *Elizabeth H. Danello*, *Kimberly L. Paschall*, *Ryan H. Creighton*, and *Emory V. Cole*, Assistant U.S. Attorneys.

Before: HENDERSON and CHILDS, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

2

Opinion for the Court filed by *Senior Circuit Judge* EDWARDS.

EDWARDS, *Senior Circuit Judge*: On August 2, 2021, following a jury trial, Appellant, Joey Green-Remache, was convicted on a charge of interstate violation of a protective order in violation of 18 U.S.C. § 2262(a)(2). The jury hung on two other charges against Appellant: first-degree burglary and kidnapping. On November 8, 2021, after Appellant entered a guilty plea to the charge of first-degree burglary, the Government agreed to dismiss the kidnapping charge. Following sentencing by the District Court, Appellant filed a timely notice of appeal.

The charges against Appellant are predicated on the Government's claim that he "[broke] into his on-again and off-again girlfriend's apartment and forcibly [took] her from D.C. to Maryland, in violation of a civil protective order." Appellant's Brief ("Br.") 3. At trial, "[t]he Government presented a Clinical Psychologist who testified without objection as an expert witness. [The Psychologist] described [to the jury] the characteristics of so-called coercive control relationships between sexual partners." *Id*. And, according to Appellant, "Defense counsel [was aware] before trial that [the Psychologist] knew nothing about this case, had never met or interviewed the victim—who at trial recanted almost all her prior statements—her family members, or any witnesses, nor examined any underlying records." *Id*. Appellant argues that the jury was likely heavily influenced by the Psychologist's "opinion testimony," which improperly relied on profiling unconnected to the circumstances of this case. *Id*. Thus, according to Appellant, this case should be remanded to determine whether counsel's failure to object to the Psychologist's testimony was ineffective assistance that prejudiced Appellant. *Id*.

We deny Appellant's request for a remand of the case. As we explain below, the record decisively shows that Appellant was not prejudiced by his counsel's alleged errors. As a result, we affirm the judgment of the District Court.

## I. BACKGROUND

### A. Facts

The charges against Appellant and his ultimate conviction emanated from events that occurred on April 12, 2020. The Government alleges that on that day, Appellant abducted his sometimes girlfriend, B.P., forced her across state lines in violation of an existing Civil Protection Order, and raped her.

Before a grand jury, B.P. testified that, on April 12, 2020, Appellant forced his way into her Washington, D.C., apartment and then proceeded to grab, choke, and punch her. She further testified that Appellant then forcibly took her from the apartment, threatened her to get into a car with him, and drove her to Maryland. B.P. told the grand jury that, while in Maryland, Appellant raped her. B.P. also provided a substantially similar account of events to a 911 responder, law enforcement officers, and the Sexual Assault Nurse Examiner ("SANE") who examined B.P. the day after the alleged rape.

In the months following her grand jury testimony and interviews with law enforcement, B.P. grew reluctant to testify at Appellant's trial. At the trial, the Government subpoenaed B.P. and noted during its questioning that B.P. had attempted to avoid receiving the subpoena for some time. On the stand, B.P. recanted most of her grand jury testimony as well as her 911 call and her statements to law enforcement officers and the SANE. B.P. testified that she voluntarily left her apartment

with Appellant, that Appellant did not hit, grab, or threaten her while in her apartment or when leaving, and that Appellant did not rape her. She explained that she had lied during her grand jury testimony and to law enforcement and the SANE because she had been angry at Appellant at the time.

The Government presented a broad swath of evidence to impeach B.P.'s trial testimony and support its theory that Appellant pushed his way into B.P.'s apartment, choked and punched B.P., and forced B.P. to leave her apartment. The Government introduced B.P.'s grand jury testimony and played her 911 call and interviews with law enforcement officers for the jury. In her grand jury testimony and the recordings, B.P. states that Appellant forcibly dragged her from her apartment, drove her to Maryland, and raped her. The Government additionally presented the testimony of the SANE, who saw visible signs of assault on B.P.'s body, including abrasions, lacerations, and bruising on her neck, throat, upper chest, and back. At trial, the Government also played recordings of several phone calls between B.P. and Appellant which took place while Appellant was incarcerated at the D.C. Jail, including one in which Appellant stated his intention to apologize to B.P. and B.P. accepted his apology.

Additionally, the Government called two eyewitnesses. These eyewitnesses were B.P.'s neighbor and her roommate. B.P.'s neighbor told the jury that she saw Appellant push B.P.'s door open and immediately start yelling at B.P. B.P.'s roommate testified that Appellant pushed his way into the apartment, yelled at and punched B.P., and then grabbed B.P. around the waist as he forced B.P. out the door.

As further support for its case, the Government called a Clinical Psychologist, Dr. Chitra Raghavan, as an expert witness. Dr. Raghavan stated that her testimony was limited to

the theory, research, and frameworks used to understand domestic violence. She made it clear that her testimony did not reach "any particular behaviors" of Appellant or B.P. and that she was not attempting to diagnose either. Her testimony discussed "coercive control," a term psychologists use to describe abuse dynamics, as well as common tactics used by abusers, including physical and sexual violence.

Dr. Raghavan's testimony also covered the circumstances in which a domestic violence victim reports a crime by their abuser. She stated that, at first, a victim may feel relief, and that this is typically "followed by guilt, fear and shame of various different kinds." Dr. Raghavan stated that victims may subsequently try to get the charges against the abuser dropped, that they may recant their prior statements, lie, testify on behalf of the abuser, or refuse to testify at all. Dr. Raghavan also discussed a study regarding calls made by incarcerated abusers to their victims. Dr. Raghavan told the jury that, according to this study, incarcerated abusers attempted to manipulate their victims into lying, recanting, or trying to get the charges dropped with three common tactics: by creating a sense of guilt in their victim; by emphasizing how much they love their victim; and by threatening their victim.

## B. Procedural History

On November 3, 2020, Appellant was indicted on charges of kidnapping, 18 U.S.C. § 1201(a)(1), interstate violation of a protection order causing travel of victim, 18 U.S.C. § 2262(a)(2), and first-degree burglary, 22 D.C.C. § 801(a). Several months later, Appellant was tried by a jury in the District Court. The jury convicted Appellant of interstate violation of a protection order and hung on the kidnapping and burglary counts. To be guilty of interstate violation of a protection order, a defendant must "cause[] another person to

travel in interstate or foreign commerce . . . by force, coercion, duress, or fraud" in violation of a protection order. 18 U.S.C. § 2262(a)(2).

Appellant subsequently pled guilty to the burglary charge. In exchange for his guilty plea, the Government agreed to dismiss the kidnapping charge. Appellant retained the right to appeal based on ineffective assistance of counsel.

Appellant was sentenced to consecutive terms of 51 months of imprisonment on the interstate violation charge and 60 months of imprisonment on the burglary charge. Appellant was also sentenced to concurrent terms of 36 months of supervised release on the interstate violation charge and 60 months of supervised release on the burglary charge. In total, Appellant was sentenced to 111 months of imprisonment and 60 months of supervised release. Appellant now appeals his sentence, claiming ineffective assistance of counsel.

## II.    ANALYSIS

A defendant asserting ineffective assistance of counsel must demonstrate two things: "(1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense." *In re Sealed Case*, 901 F.3d 397, 404 (D.C. Cir. 2018) (quotation omitted). On the first prong, the defendant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). With regard to the second prong, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

We typically remand "colorable and previously unexplored claim[s] of ineffective assistance" for an evidentiary hearing, including those raised, for the first time, on appeal. *United States v. Rashad*, 331 F.3d 908, 908-09 (D.C. Cir. 2003). The rationale for this practice lies in "the fact-intensive nature of the *Strickland* inquiry and the likelihood, when a defendant asserts his sixth amendment claim for the first time on direct appeal, that the relevant facts will not be part of the trial record." *Id*. at 909; *see also Massaro v. United States*, 538 U.S. 500, 504-05 (2003) ("When an ineffective-assistance claim is brought on direct appeal, appellate counsel and the court must proceed on a trial record not developed precisely for the object of litigating or preserving the claim and thus often incomplete or inadequate for this purpose.").

However, this court does not remand every ineffective assistance of counsel claim that is initially raised on appeal. *See United States v. Sitzmann*, 893 F.3d 811, 831 (D.C. Cir. 2018) ("[T]his Court has 'never held that *any* claim of ineffective assistance of counsel, no matter how conclusory or meritless, automatically entitles a party to an evidentiary remand.'") (quoting *United States v. McGill*, 815 F.3d 846, 945 (D.C. Cir. 2016)). Rather, "we decline to remand when the record 'conclusively shows' the defendant is not entitled to relief." *United States v. Marshall*, 946 F.3d 591, 596 (D.C. Cir. 2020) (quoting *Rashad*, 331 F.3d at 910).

There are three categories of cases with respect to which a remand is inappropriate. First, remand is not required in cases involving "claims that are vague, conclusory, or insubstantial." *Id*. at 596. Second, we do not remand "when the record conclusively shows the defendant was not prejudiced, [because] no factual development could render the claim meritorious." *Id*. Finally, we do not remand in situations "when the record conclusively shows counsel did not err by falling

below an objective standard of reasonableness, [because] there is no deficient performance to form the basis of a Sixth Amendment violation under *Strickland*." *Id*.

In this case, Appellant was convicted by the jury only of interstate violation of a protection order, and it is with respect to this conviction that he focuses his ineffective assistance of counsel claim. *See* Appellant Br. at 29. Accordingly, our analysis is limited to whether trial counsel's performance was constitutionally deficient and prejudicial to Appellant on this charge.

Given the record in this case, Appellant's ineffective assistance of counsel claim must fail because he cannot show that he was prejudiced by counsel's alleged errors. The Government introduced ample evidence to support its theory that Appellant caused B.P. to travel with him to Maryland by "force, coercion, duress, or fraud," *See* 18 U.S.C. § 2262(a)(2), quite apart from Dr. Raghavan's testimony. This evidence included B.P.'s own grand jury testimony in which she testified that Appellant forcibly removed her from her apartment; two recorded interviews of B.P. by law enforcement officers, in which B.P. states that Appellant choked and beat her and forced her to leave her apartment; a recording of B.P.'s 911 call, in which she again states that Appellant beat her and forced her to leave her apartment; testimony from the SANE who examined B.P. and saw clear signs of assault on B.P.'s body, including abrasions, lacerations, and bruises; and testimony from two eyewitnesses who saw Appellant push his way into the apartment and start yelling at B.P., as well as further testimony from one of the eyewitnesses who saw Appellant punch B.P. and drag her out of her apartment.

This "overwhelming" evidence against Appellant undercuts any claim that, but for counsel's alleged errors, the

outcome of the trial would have been different. *See United States v. Brodie*, 524 F.3d 259, 273 (D.C. Cir. 2008); *United States v. Smoot*, 918 F.3d 163, 168 (D.C. Cir. 2019) (finding no prejudice where the evidence against the defendant was "overwhelming"). In such circumstances, our precedent requires us to decline Appellant's request for a remand on his ineffective assistance of counsel claim. *See United States v. Grey*, 891 F.3d 1054, 1062 (D.C. Cir. 2018) (no remand based on counsel's failure to object to certain evidence in light of other "extensive evidence" of defendant's guilt); *United States v. Udo*, 795 F.3d 24, 30-33 (D.C. Cir. 2015) (no remand where defendant could not show prejudice given the "overwhelming" evidence of defendant's guilt).

As the record conclusively shows, the Government offered a substantial amount of evidence demonstrating Appellant's guilt on the interstate violation charge. This evidence stands irrespective of the contested expert testimony. Thus, even if we were to find that counsel erred in failing to object to Dr. Raghavan's testimony – a question we do not reach – there is nothing to indicate that Appellant would have been acquitted of the charge relating to interstate violation of a protection order. The evidence against him is simply too great.

Appellant nevertheless argues that Dr. Raghavan's purported expert testimony likely unduly influenced the jury. The record, however, does not substantiate this. At trial, the jury only convicted Appellant of interstate violation of a protection order; the jury hung on the kidnapping and burglary charges against him. The Government's theory for these latter two charges relied significantly on refuting B.P.'s trial testimony, and, by extension, on Dr. Raghavan's account of the behavior patterns of domestic violence victims. By contrast, the Government's case in support of conviction on the interstate violation charge included considerable evidence of Appellant's

guilt that was independent of B.P.'s testimony. Thus, on the two charges with respect to which the Government heavily relied on Dr. Raghavan's testimony, the jury failed to convict Appellant. However, on the sole count on which the jury convicted Appellant, the Government's case was well supported without Dr. Raghavan's testimony. The jury's verdicts indicate that Dr. Raghavan's testimony, "even if admitted in error, had no substantial and injurious effect or influence in determining the jury's verdict." *Grey*, 891 F.3d at 1061 (quotations omitted). The lack of influence of Dr. Raghavan's testimony on the jury is consistent with our conclusion that Appellant was not prejudiced by counsel's alleged error.

Because the only error Appellant alleges concerns the inclusion of Dr. Raghavan's testimony, an evidentiary hearing on Appellant's ineffective assistance of counsel claim would lend no meaningful support to his case. No further factual development can surmount the "mountain of evidence" against Appellant. *Udo*, 795 F.3d at 32. "[G]iven the extensive evidence of [Appellant's] guilt, we think it obvious that counsel's errors, if any, were not so serious as to deprive [Appellant] of a fair trial." *Grey*, 891 F.3d at 1062 (quotation omitted).

## III. CONCLUSION

For the reasons explained above, we affirm the judgment of the District Court.