People v Valdez (2020 NY Slip Op 01529)





People v Valdez


2020 NY Slip Op 01529


Decided on March 5, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: March 5, 2020

110369

[*1]The People of the State of New York, Respondent,
v
Bentley A. Valdez, Appellant.

Calendar Date: January 16, 2020

Before: Garry, P.J., Egan Jr., Lynch, Mulvey and Reynolds Fitzgerald, JJ.


Hegge & Confusione, LLC, New York City (Michael Confusione of counsel), for appellant.
Chad W. Brown, District Attorney, Johnstown (Katherine Ehrlich of counsel), for respondent.



Lynch, J.
Appeal from a judgment of the County Court of Fulton County (Hoye, J.), rendered April 25, 2018, upon a verdict convicting defendant of the crimes of aggravated cruelty to animals (two counts) and overdriving, torturing and injuring animals; failure to provide sustenance (15 counts).
In April 2017, the State Police was contacted by a dog control officer regarding the poor condition of multiple French mastiff dogs located on defendant's 150-acre property in the Town of Stratford, Fulton County. Upon arriving at defendant's property, the State Police observed dogs that were extremely skinny, had little shelter and no food or water, as well as multiple deceased dogs. After being unable to locate defendant, the State Police, in cooperation with the Brennan Humane Society, seized 12 live dogs from the premises and arranged for some dogs who needed immediate medical attention to be taken to the vet. The following day, pursuant to a warrant, the State Police seized the remains of nine deceased dogs. Thereafter, defendant was charged with seven counts of aggravated cruelty to animals and 19 counts of overdriving, torturing and injuring animals; failure to provide sustenance (hereinafter failure to provide sustenance). Following a jury trial, defendant was convicted of two counts of aggravated cruelty to animals (see Agriculture and Markets Law § 353-a) and 15 counts of failure to provide sustenance (see Agriculture and Markets Law § 353).[FN1] Defendant was sentenced to a maximum permissible sentence of two years in the local jail on his conviction of aggravated cruelty to animals under count 7 of the indictment (see Agriculture and Markets Law § 353-a [3]) and, for his conviction of aggravated cruelty to animals under count 9 of the indictment, to a conditional discharge for a period of three years. As for his convictions of failure to provide sustenance, defendant was sentenced to one year each in the local jail. County Court also ordered defendant to never be able to own, harbor or have custody or control of any animals (see Agriculture and Markets Law § 374 [8] [c]). Defendant appeals.
Defendant contends that his convictions for aggravated cruelty to animals were based upon legally insufficient evidence, and that the verdict as to those convictions was against the weight of the evidence, because the proof at trial did not establish that he acted with an intent to cause extreme physical pain or that his actions were carried out in an especially depraved or sadistic manner (see Agriculture and Markets Law § 353-a).[FN2] Initially, defendant failed to preserve the legal sufficiency contention as his motion for a trial order of dismissal did not relate to the two counts of aggravated cruelty to animals that defendant was convicted of (counts 7 and 9) (see People v Lane, 7 NY3d 888, 889 [2006]; People v Gray, 86 NY2d 10, 19-22 [1995]). However, "we necessarily determine whether the elements of the crimes were proven beyond a reasonable doubt as part of our weight of the evidence review" (People v Martinez, 166 AD3d 1292, 1293 [2018] [internal quotation marks, brackets and citations omitted], lv denied 32 NY3d 1207 [2019]; see People v Danielson, 9 NY3d 342, 348 [2007]). "When conducting such a review, we must view all the credible evidence in a neutral light and determine, first, that an acquittal would not have been unreasonable and, only if so, weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony to determine if the verdict is supported by the weight of the evidence" (People v Martinez, 166 AD3d at 1293 [internal quotation marks and citations omitted]; see People v Urtz, 176 AD3d 1485, 1485-1486 [2019], lv denied ___ NY3d ___ [Jan. 31, 2020]).
"A person is guilty of aggravated cruelty to animals when, with no justifiable purpose, he or she intentionally kills or intentionally causes serious physical injury to a companion animal with aggravated cruelty" (Agriculture and Markets Law § 353-a [1]). "[A]ggravated cruelty" is defined as conduct "which: (i) is intended to cause extreme physical pain; or (ii) is done or carried out in an especially depraved or sadistic manner" (Agriculture and Markets Law § 353-a [1]). "'[C]ruelty' includes every act, omission, or neglect, whereby unjustifiable physical pain, suffering or death is caused or permitted" (Agriculture and Markets Law § 350 [2]). Agriculture and Markets Law § 353-a was passed in response to an incident when a cat was dosed with kerosene and set on fire, and the Legislature noted other gruesome and cruel acts to animals when enacting the statute, such as "animals [being] thrown from windows, used for target practice, subjected to hanging and starved" (Governor's Mem approving L 1999, ch 118, 1999 McKinney's Session Laws of NY at 1469; see Assembly's Mem in Support, 1999 McKinney's Session Laws of NY at 1585). In upholding convictions for aggravated cruelty to animals, we have considered whether the killing or serious physical injury to a companion animal was done in a manner "likely to prolong [the animal's] suffering" (People v Moors, 140 AD3d 1207, 1209 [2016], lv denied 28 NY3d 934 [2016]), and whether the defendant's acts, although alone may not be sufficient, "considered cumulatively" establish the elements of this crime (People v Degiorgio, 36 AD3d 1007, 1009 [2007], lv denied 8 NY3d 921 [2007], cert denied 552 US 999 [2007]).
Here, defendant was convicted of aggravated cruelty to animals for his treatment of two separate dogs, identified in the indictment as dog No. 6 and dog No. 10. A dog control officer testified that, on April 5, 2017, she received a phone call regarding the poor condition of dogs on defendant's property. In response to this call, she went to defendant's property where she saw "noticeably very thin" dogs with "[v]ertebrate [and] ribs showing" and, thus, she contacted the State Police. A State Trooper testified that when he arrived at defendant's property, he observed a small pen with a couple of dogs in it that were "[s]kin and bones" and some deceased dogs that started to decompose. The trooper also observed that the dogs "had very little shelter, no food and no water." A further walkthrough of the property revealed additional pens with dogs and multiple deceased dogs in burlap bags, as well as live and deceased dogs inside of defendant's house. A total of 13 live dogs were located on the property — 12 of which were seized because one could not be caught — and the remains of nine deceased dogs were seized from the property. Dog No. 6 was found deceased on the couch, while dog No. 10 was found still alive in the porch area of defendant's house. Various photographs of the live and deceased dogs were admitted into evidence.
James Smith, a veterinarian, testified that he conducted necropsies on the dogs. As to dog No. 10, Smith stated that the dog was still alive when brought to be treated but died later that day. The physical exam showed that the dog was weak and depressed, was suffering from severe ear mite infestation and thickened, ulcerated sores on the limbs, and exhibited muscle wasting and had labored breathing. Additionally, Smith's assessment showed that the dog "was suffering from starvation[,] [s]evere periodontal disease[,] [a] congenital ocular malformation[,] [e]ctoparasitism[,] [a]nd . . . sores . . . from [the dog] being down and unable to walk." The necropsy of the dog revealed that the dog was suffering from pneumonia and bled out internally — a condition that was "a common sequel to starvation." Further, the dog had no fat stores in the body and an entirely empty digestive tract, which means that "this dog was in a clinical state of starvation for at least two months." As to dog No. 6, Smith testified that she was brought to him already deceased. The necropsy revealed that the dog had severe infection of the uterus which, in his opinion, caused the dog's death. According to Smith, an ordinary person would have noticed that the dog had an infection due to her suffering from various symptoms. Further, the necropsy revealed that the dog had a small liver, empty gastrointestinal tract and diarrhea, which indicated that the dog was in "stages of progressive starvation."
Defendant testified to feeding and caring properly for the dogs and explained that, due to medical conditions, he was away from his home from April 4 to April 6, 2017. Additionally, two psychologists testified as to defendant's mental state. A clinical psychologist, Rudy Nydegger, concluded that defendant had met the criteria for a major depressive disorder, posttraumatic stress disorder, adjustment disorder with anxiety and an unspecified personality disorder. According to Nydegger, defendant also reported that the dogs were extremely important to him, but he realized that he might not have been doing as good of a job as he should have. In Nydegger's opinion, defendant's ability to adequately care for the dogs was impaired by his mental condition. To rebut this testimony, the People called Jacqueline Bashkoff, a forensic psychologist. Bashkoff disagreed with Nydegger's diagnoses of a major depressive disorder and posttraumatic stress disorder, concluding that defendant did not suffer from a mental disease or defect that would render him not responsible for the crimes. According to Bashkoff, defendant was very cognizant that the dogs were dying and that they were not getting enough food or water, but did not seek any help or take appropriate measures to save the dogs.
Although a different verdict would not have been unreasonable, viewing the evidence in a neutral light and deferring to the jury's credibility determinations, we find that the verdict is supported by the weight of the evidence. The record shows that the dogs were located on defendant's property with no food, water, little shelter and in filthy conditions. Dog No. 10 was in a clinical state of starvation for at least two months prior to dying from pneumonia that was a common sequel to starvation, and dog no. 6 was in a progressive state of starvation and died from a severe, untreated infection. This evidence, considered cumulatively, establishes that defendant's unjustifiable, intentional conduct caused the dogs to suffer immensely for an extended prior of time prior to dying, which satisfies the elements of aggravated cruelty to animals (see Agriculture and Markets Law § 353-a [1]; People v Moors, 140 AD3d at 1209; People v Degiorgio, 36 AD3d at 1009). Defendant's explanations and assertions that he took proper care of the dogs created credibility issues for the jury to resolve (see generally People v Hopkins, 138 AD3d 1245, 1246 [2016], lv denied 27 NY3d 1152 [2016]; People v Reynoso-Fabian, 134 AD3d 1141, 1148 [2015]). In light of the foregoing, we find that the verdict as to defendant's convictions of aggravated cruelty to animals was supported by the weight of the evidence.
We also reject defendant's contention that County Court imposed a harsh and excessive sentence. Defendant was sentenced to a maximum permissible term of two years in the local jail (see Agriculture and Markets Law § 353-a [3]) and, in light of defendant's callous conduct toward the dogs, we cannot conclude that such sentence was harsh or excessive. Additionally, the court was authorized to issue an order directing defendant to not "own, harbor, or have custody or control of any other animals, other than farm animals, for a period of time which the court deems reasonable" (Agriculture and Markets Law § 374 [8] [c]; see People v Brinkley, 174 AD3d 1159, 1167 [2019], lv denied 34 NY3d 979 [2019]). Considering defendant's failure to provide water, food, shelter and needed veterinary care for the dogs for a lengthy period of time — or, at a minimum, reach out for help in caring for the dogs — which resulted in the dogs suffering from severe diseases, being malnourished and dying, we decline to disturb the court's imposition of a lifetime bar to defendant owning companion animals (see People v Brinkley, 174 AD3d at 1167-1168).
Garry, P.J., Egan Jr., Mulvey and Reynolds Fitzgerald, JJ., concur.
ORDERED that the judgment is affirmed.



Footnotes

Footnote 1: County Court granted defendant's motion for a trial order of dismissal as to the remaining counts.

Footnote 2: We construe defendant's contentions — that evidence at trial does not rise to the level of proof beyond a reasonable doubt to establish the elements of aggravated cruelty to animals — as a challenge to the weight of the evidence.