People v Montford (2022 NY Slip Op 04328)

People v Montford

2022 NY Slip Op 04328

Decided on July 7, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:July 7, 2022

111948
[*1]The People of the State of New York, Respondent,
v
Thomas Montford, Appellant.

Calendar Date:May 23, 2022

Before:Egan Jr., J.P., Lynch, Pritzker, Ceresia and Fisher, JJ.

Paul J. Connolly, Delmar, for appellant.
Robert M. Carney, District Attorney, Schenectady (Peter H. Willis of counsel), for respondent.

Fisher, J.
Appeal from a judgment of the Supreme Court (Coccoma, J.), rendered August 25, 2017 in Schenectady County, upon a verdict convicting defendant of the crimes of attempted criminal sale of a controlled substance in the third degree, criminal possession of a controlled substance in the third degree and criminal possession of a controlled substance in the seventh degree.
Defendant was previously convicted of several crimes arising out of a controlled purchase of crack cocaine between a confidential informant (hereinafter CI) and defendant in the City of Schenectady. After the transaction, law enforcement officers stopped defendant and found that he was carrying a pouch containing a substance later determined to be heroin. Upon defendant's prior appeal, this Court reversed the convictions and remitted the matter for a new trial (145 AD3d 1344 [2016], lv denied 29 NY3d 999 [2017]). The matter proceeded to a second jury trial on the charges of criminal sale of a controlled substance in the third degree (count 1) and two counts of criminal possession of a controlled substance in the third degree pertaining respectively to the crack cocaine and the heroin (counts 2 and 3). At the conclusion of the second trial,[FN1] defendant was found not guilty of count 1, but guilty of the lesser included offense of attempted criminal sale of a controlled substance in the third degree. Defendant was also found guilty of count 2. As to count 3, he was found not guilty, but guilty of the lesser included offense of criminal possession of a controlled substance in the seventh degree. Defendant was sentenced to concurrent prison terms of four years, to be followed by two years of postrelease supervision, on the two felony convictions and a lesser term of incarceration on the misdemeanor conviction. Defendant appeals.
Defendant contends that the verdict is not supported by legally sufficient evidence and is against the weight of the evidence. However, defendant's "legal sufficiency claim is unpreserved because his general motion for a trial order of dismissal did not include arguments directed at specific deficiencies in the proof" (People v Youngs, 175 AD3d 1604, 1606 [2019]; see People v Tallon, 175 AD3d 1598, 1598 [2019], lv denied 35 NY3d 1070 [2020]). "Nevertheless, in reviewing defendant's argument that the verdict is against the weight of the evidence, this Court must necessarily ensure that the People established each element of the crime[s]" (People v Sorrell, 196 AD3d 923, 923 [2021] [internal quotation marks and citations omitted], lv denied 37 NY3d 1029 [2021]). "In conducting a weight of the evidence review, we must view the evidence in a neutral light and determine first whether a different verdict would have been unreasonable and, if not, weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony to determine if the verdict is supported by the weight of the evidence[*2]" (People v Barzee, 190 AD3d 1016, 1017-1018 [2021] [internal quotation marks and citations omitted], lv denied 36 NY3d 1094 [2021]).
As relevant here, a person is guilty of attempted criminal sale of a controlled substance in the third degree when he or she knowingly and unlawfully attempts to sell a narcotic drug (see Penal Law §§ 110.00, 220.39 [1]). Attempt requires an intent to commit the crime while engaging "in conduct which tends to effect [its] commission" (Penal Law § 110.00; see People v Gueye, 200 AD3d 1227, 1227 [2021], lv denied 38 NY3d 950 [2022]). "A person is guilty of criminal possession of a controlled substance in the third degree when he [or she] knowingly and unlawfully possesses . . . a narcotic drug with intent to sell it" (Penal Law § 220.16 [1]). Lastly, "[a] person is guilty of criminal possession of a controlled substance in the seventh degree when he or she knowingly and unlawfully possesses a controlled substance" (Penal Law § 220.03).
At trial, the People produced testimony from the CI and several law enforcement officers who established that the CI telephoned a man she knew as "Black" — later identified as defendant — and made arrangements to meet him to purchase crack cocaine at a specific location. The CI explained that, prior to the transaction, she was searched by a law enforcement officer and found to have no money or contraband, and then she was provided with a video recorder, audio recorder and two $20 bills that the police had photocopied. The CI testified that she met defendant at the agreed-upon location and gave defendant the buy money in exchange for crack cocaine that she described as "[t]wo little plastic things with white rocks in it." Officers explained that the crack cocaine was packaged as a "corner tie" from a plastic bag, a common packaging method for sale. In addition to direct observation, officers made use of surveillance cameras and the CI's transmission equipment to observe the transaction and to follow defendant thereafter. When the CI returned to the police vehicle, she handed an investigator the crack cocaine and told officers that defendant had a pouch containing what she believed to be heroin. Officers then stopped defendant and conducted a search of his person, which resulted in the discovery of a pouch containing 17 glassine envelopes that each held a substance later identified as heroin. According to several officers, there were no needles or syringes in the pouch that would have been indicative of personal use, and the manner in which the heroin was packaged was consistent with the typical packaging of heroin for the purpose of sale. Officers also found on defendant's person a cell phone, cash including the two $20 bills that the police had photocopied and a piece of paper with the name "Black" and a phone number. The cell phone recovered from defendant was registered to the phone number called by the CI to set up the controlled buy, which also matched the phone number [*3]on the piece of paper that, according to an investigator, was an example of a "business card[] . . . common in drug transactions."
In addition to presenting various audio and video recordings involving the transaction, the People also introduced the transcript of defendant's testimony at the first trial. Defendant's prior testimony revealed that he received a phone call from a woman who asked him to meet her on the street, which he did for "personal business" that lasted a "[c]ouple of seconds." Approximately 10 to 20 minutes after meeting her, defendant contended he was stopped and arrested by officers who seized property from him. This included his cell phone and a piece of paper that had written on it a phone number and the name Black — which defendant admitted was his nickname in the street.
Although a different verdict would not have been unreasonable if the jury had not credited the testimony of certain officers and the CI (see People v Pettus, 160 AD3d 1049, 1050 [2018]), after evaluating the evidence in a neutral light and according deference to the jury's credibility determinations (see People v Gill, 168 AD3d 1140, 1142 [2019]), we find that the convictions are not against the weight of the evidence (see People v Paul, 202 AD3d 1203, 1207-1208 [2022], lv denied 38 NY3d 1034 [2022]; People v Avila, 194 AD3d 1120, 1122 [2021], lvs denied 37 NY3d 962, 963 [2021]; People v Sumpter, 191 AD3d 1160, 1162-1163 [2021], lv denied 37 NY3d 968 [2021]). As corroborated by surveillance and audio footage, the testimony of the officers and the CI established that the controlled buy occurred in the area where defendant admitted he agreed to meet a woman for "personal business." After being stopped and searched, the alias Black and the phone number associated with the seller were ultimately linked to defendant, and he was found in possession of the money provided by the police to the CI to effectuate the controlled buy. The narcotics that were given by defendant to the CI and found by officers in the search of defendant's person were confirmed to be crack cocaine and heroin. Furthermore, officers testified that the recovered narcotics were packaged in a manner common for sale rather than for personal use, which was particularly corroborated by the lack of needles or syringes and the "business card." Based on the foregoing, the weight of the evidence supported the verdict (see People v Adams, 201 AD3d 1031, 1034-1035 [2022], lvs denied 38 NY3d 948, 953 [2022]; People v Patterson, 199 AD3d 1072, 1075-1076 [2021], lv denied 37 NY3d 1163 [2022]).
Defendant's remaining arguments do not warrant extended discussion. Defendant's contention that the jury's verdict was repugnant is not preserved for our review because he did not object to the verdict before the jury was discharged (see People v Shackelton, 177 AD3d 1163, 1166-1167 [2019], lv denied 34 NY3d 1162 [2020]; People v Rice, 172 AD3d 1616, 1619 [2019]). Similarly, defendant's claim of prosecutorial [*4]misconduct based on statements made during summation is unpreserved for appellate review because he failed to interpose timely and specific objections at trial (see People v Morton, 198 AD3d 1176, 1180 [2021], lv denied 37 NY3d 1163 [2022]; People v Fragassi, 178 AD3d 1153, 1156-1157 [2019], lv denied 34 NY3d 1128 [2020]), and we decline defendant's invitation to take corrective action in the interest of justice (see People v Hahn, 159 AD3d 1062, 1067 [2018], lv denied 31 NY3d 1117 [2018]; People v Stanford, 130 AD3d 1306, 1309 [2015], lv denied 26 NY3d 1043 [2015]). We have examined defendant's remaining contentions and find them to be unpersuasive.
Egan Jr., J.P., Lynch, Pritzker and Ceresia, JJ., concur.
ORDERED that the judgment is affirmed.

Footnotes

Footnote 1: After an inquiry by Supreme Court, defendant proceeded pro se with his prior counsel available as standby counsel.