People v DeCamp (2022 NY Slip Op 06839)

People v DeCamp

2022 NY Slip Op 06839

Decided on December 1, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:December 1, 2022

113117
[*1]The People of the State of New York, Respondent,
v
Tyler J. DeCamp, Appellant.

Calendar Date:October 11, 2022

Before:Garry, P.J., Clark, Aarons, Pritzker and Fisher, JJ.

John R. Trice, Elmira, for appellant.
Michael A. Korchak, District Attorney, Binghamton (Rita M. Basile of counsel), for respondent.

Fisher, J.
Appeal from a judgment of the County Court of Broome County (Kevin P. Dooley, J.), rendered October 18, 2019, upon a verdict convicting defendant of the crimes of assault in the first degree (two counts), tampering with physical evidence and resisting arrest.
Defendant was charged by indictment with two counts of attempted murder in the second degree, two counts of assault in the first degree, tampering with physical evidence and resisting arrest. Following a jury trial, at which defendant pursued a justification defense, he was acquitted of both counts of attempted murder and convicted of two counts of assault in the first degree (see Penal Law § 120.10), tampering with physical evidence (see Penal Law § 215.40 [2]) and resisting arrest (see Penal Law § 205.30). Defendant was sentenced to concurrent prison terms of 10 years, to be followed by five years of postrelease supervision, on each of his assault in the first degree convictions, and to lesser concurrent terms on the remaining convictions. Defendant appeals.
We affirm. Defendant challenges the verdict on assault in the first degree as against the weight of the evidence, asserting that he had a reasonable belief that one of the victims was armed with a lethal weapon and that defendant used deadly force to prevent harm to his friends and himself. In assessing whether a verdict is supported by the weight of the evidence, "this Court must first determine whether, based on all the credible evidence, a different finding would not have been unreasonable and then weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony to determine if the verdict is supported by the weight of the evidence" (People v Santiago, 206 AD3d 1466, 1467 [3d Dept 2022] [internal quotation marks and citations omitted]). For a conviction of assault in the first degree, the People bear the burden of proving, as relevant here, that, "[w]ith intent to cause serious physical injury to another person, [the defendant] cause[d] such injury to such person or to a third person by means of . . . a dangerous instrument" (Penal Law§ 120.10 [1]). With respect to the defense of justification, "unless the defendant is the initial aggressor, he or she may use physical force upon another person when and to the extent he or she reasonably believes such to be necessary to defend himself, herself or a third person from what he or she reasonably believes to be the use or imminent use of unlawful physical force by such other person" (People v Infinger, 194 AD3d 1183, 1184 [3d Dept 2021] [internal quotation marks and citations omitted], lv denied 37 NY3d 965 [2021]; see People v Harris, 206 AD3d 1063, 1064-1065 [3d Dept 2022]). "However, a person who reasonably believes that another is about to use deadly physical force is not free to reciprocate with deadly physical force if such person knows that he or she can with complete safety as to himself, herself [*2]and others avoid the necessity of so doing by retreating" (People v Cutting, 206 AD3d 1281, 1281 [3d Dept 2022] [internal quotation marks, brackets and citations omitted]; see People v Harris, 206 AD3d at 1065).
The trial testimony established that the victims met defendant and a group of his acquaintances at a fast-food restaurant to purchase drugs. After tendering payment and waiting for the delivery of the drugs from a third party not at the location, tempers began to escalate and victim A asked one of the individuals in defendant's group, who was allegedly making faces at him, to step outside the restaurant. Both victims, defendant and four other individuals in defendant's group left the restaurant. While holding his cell phone in one hand and a bag of food in the other, victim A began to argue with a member of defendant's group and the two started to shove each other. Victim A testified that several members of defendant's group began to "jump on [him]" and punch him, ultimately causing him to fall to the ground. Victim B testified that he was stabbed "right out of the gate" and fell to the ground. He further testified that others kicked and punched him while he was on the ground, and that he watched himself being stabbed multiple times by defendant. When the fight ended, defendant's group fled in a waiting vehicle. This testimony was corroborated by an employee of the restaurant who witnessed the fight and added that, when the fight was over, she observed defendant go over to one of the victims on the ground and lift his head up to continue hitting him.
Several witnesses produced by the People were members of defendant's group who fled in the same vehicle as defendant. According to them, defendant admitted to stabbing the victims and asked for everyone in the vehicle to give him anything they may have on them so that he could throw it out the window in case they get pulled over. The witnesses testified that they heard defendant roll down the window and throw objects outside the vehicle, including what was believed to be a knife. None of the witnesses testified that they saw a weapon in either of the victims' hands before or during the fight, nor did they observe either victim make a motion like they were reaching for a weapon.
The People also read defendant's grand jury testimony into the trial record, wherein defendant testified that he feared for his safety and the safety of his friends because victim A showed him a gun earlier that evening. Defendant further testified that he saw victim A "going in" his shirt which made it seem to defendant that victim A was reaching for his gun. According to defendant, he used his pocketknife to stab victim A to end the fight before victim A could use the gun on them. Defendant denied stabbing victim B and he also denied that he admitted to stabbing the victims in the getaway vehicle.
Although a different verdict would not have been unreasonable, when viewing the evidence in a neutral light and deferring [*3]to the jury's credibility determinations, we conclude that the verdict is not against the weight of the evidence (see People v Cutting, 206 AD3d at 1282; People v Kerrick, 206 AD3d 1268, 1270 [3d Dept 2022], lv denied 38 NY3d 1151 [2022]; People v Harris, 206 AD3d at 1068). At trial, none of the witnesses testified as to seeing either victim with a weapon or reaching for a weapon, and the responding police officers did not recover a gun from either the scene or the victims. The only indication in the record that victim A had a gun was defendant's self-serving testimony from the grand jury proceeding. Defendant and his group outnumbered the victims, and there were several indications in the record that defendant continued to attack at least one of the victims at the end of the fight and when the victim was down on the ground. Furthermore, even believing that defendant reasonably feared for his safety or the safety of another, the proof at trial indicated that defendant could have retreated prior to employing deadly physical force. Video surveillance footage offered at trial further established that the verdict and the jury's rejection of defendant's justification defense is supported by the weight of the evidence (see People v Montford, 207 AD3d 811, 813-814 [3d Dept 2022], lv denied ___ NY3d ___ [Oct. 28, 2022]; People v Warner, 194 AD3d 1098, 1104 [3d Dept 2021], lv denied 37 NY3d 1030 [2021]; see also People v Harris, 206 AD3d at 1068; People v Chappell, 187 AD3d 1319, 1324 [3d Dept 2020], lv denied 37 NY3d 1160 [2022]).
Lastly, we reject defendant's argument that his sentence is unduly harsh and excessive. Although defendant expressed remorse for his actions and highlighted that his criminal history consists of nonviolent misdemeanor offenses, County Court considered these factors, rejected defendant's contention that he was a nonviolent person and cited to defendant's continued drug issues. After further considering letters in support, County Court sentenced defendant to significantly less than the maximum potential term of incarceration for assault in the first degree (see Penal Law § 70.02 [3] [a]). Given the violent nature of this crime, whereby both victims suffered a punctured lung, were intubated and subsequently admitted to the intensive care unit, we decline defendant's invitation to invoke our interest of justice jurisdiction to reduce his sentence (see People v Blackmon, 207 AD3d 962, 962-963 [3d Dept 2022]; People v Minaya, 206 AD3d 1161, 1163 [3d Dept 2022]; see also CPL 470.15 [6] [b]).
Garry, P.J., Clark, Aarons and Pritzker, JJ., concur.
ORDERED that the judgment is affirmed.