People v Restifo (2023 NY Slip Op 05425)

People v Restifo

2023 NY Slip Op 05425

Decided on October 26, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:October 26, 2023

110862
[*1]The People of the State of New York, Respondent,
v
Benjamin Restifo, Appellant.

Calendar Date:September 12, 2023

Before:Egan Jr., J.P., Lynch, Ceresia and Fisher, JJ.

Adam W. Toraya, Albany, for appellant.
Robert M. Carney, District Attorney, Schenectady (Peter H. Willis of counsel), for respondent.

Egan Jr., J.P.
Appeal from a judgment of the Supreme Court (Kathleen B. Hogan, J.), rendered September 7, 2018 in Schenectady County, upon a verdict convicting defendant of the crime of aggravated cruelty to animals.
In the early evening of July 8, 2017, defendant was walking Aurora and Kaia, his two pit bull dogs, on Emmett Street in the City of Schenectady. The dogs became agitated as they walked past the home of Catherine Richards and Leslie Richards, and witnesses described defendant walking uninvited into the fenced yard and toward the front porch of their residence. Defendant walked the leashed dogs far enough into the yard to allow them to climb the steps to the front porch — a distance of 14 feet, 5 inches from the fence line — and reach the Richards' pet cat, Buttons, who was on the porch. The dogs mauled Buttons and, when Leslie Richards came out to investigate why his upstairs tenant was yelling, he found defendant standing there with his dogs, one of whom had Buttons in its mouth. Defendant rebuffed the demands of Leslie Richards and other neighbors to make the dogs stop, then pulled the dogs away and tried to flee with Buttons still in one of the dogs' mouths. Leslie Richards and neighbors who had witnessed the attack pursued defendant and continued to demand that he make the dog drop Buttons, which he did not. The crowd followed defendant back to his residence on Albany Street, where the dog finally dropped Buttons. Leslie Richards retrieved the body of Buttons from the street.
As a result of the incident, defendant was charged in an indictment with aggravated cruelty to animals and overdriving, torturing and injuring animals; failure to provide proper sustenance. Defendant was convicted as charged following a jury trial. Supreme Court sentenced defendant to six months in jail and five years of probation on the aggravated animal cruelty conviction, and a concurrent term of nine months in jail on the overdriving, torturing and injuring animals conviction. Defendant appeals.
We begin by noting that, during the pendency of this appeal, Supreme Court granted defendant's CPL article 440 motion seeking to vacate the overdriving, torturing and injuring animals conviction upon the ground that it was a lesser included offense of aggravated animal cruelty. We accordingly limit our discussion to the conviction for aggravated animal cruelty, and affirm.
First, defendant contends that the verdict is not supported by legally sufficient evidence and is also against the weight of the evidence. "When considering a challenge to the legal sufficiency of the evidence, this Court views the evidence in the light most favorable to the People and evaluates whether there is any valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury on the basis of the evidence at trial and as a matter of law satisfy the proof and burden requirements for every element of the crime charged" (People v Davis, 200 AD3d [*2]1200, 1201 [3d Dept 2021] [internal quotation marks, brackets and citations omitted]; accord People v Cotto, 218 AD3d 1021, 1022 [3d Dept 2023]). In contrast, a weight of the evidence review requires this Court to "view the evidence in a neutral light and determine first whether a different verdict would have been unreasonable and, if not," proceed to "weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony to determine if the verdict is supported by the weight of the evidence" (People v Montford, 207 AD3d 811, 812 [3d Dept 2022] [internal quotation marks and citations omitted], lv denied 39 NY3d 941 [2022]; see People v Cotto, 218 AD3d at 1022).
"A person is guilty of aggravated cruelty to animals when, with no justifiable purpose, he or she intentionally kills or intentionally causes serious physical injury to a companion animal with aggravated cruelty" (Agriculture and Markets Law § 353-a [1]). Aggravated cruelty is defined as an act, omission or neglect that, as charged to the jury here, "is done or carried out in an especially depraved or sadistic manner" (Agriculture and Markets Law § 353-a [1] [ii]; see Agriculture and Markets Law § 350 [2]). In assessing whether that standard has been met, a key consideration is "whether the killing or serious physical injury to a companion animal was done in a manner likely to prolong the animal's suffering, and whether the defendant's acts . . . 'considered cumulatively' establish the elements of [the] crime" (People v Valdez, 181 AD3d 981, 983 [3d Dept 2020] [internal quotation marks, brackets and citation omitted], quoting People v Degiorgio, 36 AD3d 1007, 1008-1009 [3d Dept 2007], lv denied 8 NY3d 921 [2007], cert denied 552 US 999 [2007]). The parties stipulated at trial that defendant was the man with the two pit bulls that killed Buttons, a companion animal, and there was no dispute that the killing had no justifiable purpose. The only question, as a result, is whether the proof established that defendant intended to kill or seriously injure Buttons with the requisite aggravated cruelty.
Defendant was well aware that his dogs were "very aggressive," as he put it in his testimony, and he acknowledged that he even kept the dogs away from his young son because it was "not worth the risk." By the time the dogs killed Buttons in July 2017, he also knew that they would attack smaller animals, including pets, and the proof reflected that he was uninterested in addressing the problem. For example, the trial included testimony from a homeowner who described an incident prior to the attack on Buttons in which defendant allowed his leashed dogs to run onto her porch and lunge at two feral cats without making any effort to stop them. Other testimony revealed a second incident in May 2016 wherein defendant's dogs fatally mauled a small dog when the dog ran toward them. The small dog's owner and another eyewitness testified [*3]that defendant made no effort to stop that attack either, instead telling the small dog's owner that it was "done" and to let defendant's dogs "finish it." The pit bulls were so aggressive, in fact, that an animal control officer testified to telling defendant in September 2016 that he should keep them muzzled while walking them. Defendant, despite that warning, did not muzzle them and continued to walk them on a regular, six-foot leash. Other testimony reflected that defendant consciously allowed the pit bulls to attack other animals, with his former coworkers testifying as to how he bragged about his prowess in controlling aggressive dogs and how he let his pit bulls "go after" other dogs and go off leash to attack "wild animals and old animals."
The proof, in other words, reflected that defendant was aware of his pit bulls' aggressive behavior toward other animals, made little effort to stop their penchant for attacking smaller animals and, in fact, encouraged it. Moreover, a next door neighbor of the Richards who witnessed the attack on July 8, 2017 testified that defendant calmly walked the pit bulls into the Richards' yard and toward the front porch, where Buttons was visible, and made no effort to pull the dogs back. Thereafter, once the pit bulls had attacked Buttons, that neighbor and others testified that defendant did not stop the attack or even try to make the dogs drop the cat's carcass, instead choosing to leave the scene with Buttons still in one of the dogs' mouths and protesting that he could not "do anything." Viewing the foregoing proof in the light most favorable to the People — and stressing that "[c]riminal intent may be inferred from the totality of the circumstances or from the natural and probable consequences of the defendant's conduct" — it provided a valid line of reasoning from which the jury could infer that defendant trespassed into the Richards' yard on July 8, 2017 with the aim of letting the pit bulls reach Buttons and knowing full well what would happen if they did so (People v Conway, 179 AD3d 1218, 1219 [3d Dept 2020] [internal quotation marks, ellipsis, brackets and citations omitted], lv denied 35 NY3d 941 [2020]). Accordingly, "considered cumulatively under the prevailing circumstances, we conclude that the proof was legally sufficient to satisfy the statutory elements of the charged crime" (People v Degiorgio, 36 AD3d at 1009; see People v Valdez, 181 AD3d at 985).
To be sure, defendant offered a different account in his testimony. Defendant downplayed the importance of, as well as his culpability in, the prior incidents in which the pit bulls attacked other animals. He also denied telling a coworker that he let the pit bulls attack other dogs and denied having been told by the animal control officer to muzzle the pit bulls when he was walking them. As for the July 8, 2017 incident itself, defendant denied having any intent to harm Buttons, claiming that the pit bulls became alert and entered the Richards' [*4]yard on their own and that he was trying to guide them away when he became distracted by the Richards' upstairs tenant yelling at him to get off of the property. He further described how he only spotted Buttons moments before the attack when the cat walked toward the pit bulls in an aggressive manner, as well as how he tried to pull the pit bulls back and cried out to the tenant to get the cat before the attack occurred. Defendant's account was uncorroborated, however, and was directly contradicted by the neighbor who witnessed the entire incident, watched defendant calmly stroll into the Richards' yard with the dogs and made clear not only that the Richards' upstairs tenant only started screaming at defendant to "[l]et the cat go" after the pit bulls attacked Buttons, but that defendant made no effort to prevent or stop the attack at any point. In short, the jury had an opportunity to hear the competing accounts of what occurred on July 8, 2017, and it credited the proof that defendant had intentionally acted to seriously injure or kill Buttons by the depraved means of dog attack. We accord deference to that assessment of credibility and, having done so, are also satisfied that the verdict is not against the weight of the evidence (see People v Valdez, 181 AD3d at 985; People v Moors, 140 AD3d 1207, 1209 [3d Dept 2016], lv denied 28 NY3d 934 [2016]).
Turning to defendant's challenge to Supreme Court's Molineux/Ventimiglia ruling, he argues that the People should not have been permitted to present testimony regarding the May 2016 incident in which defendant's dogs mauled a small dog and the comments he made to coworkers regarding his ability to handle his aggressive dogs and his willingness to let them attack other animals. "Evidence of uncharged crimes or prior bad acts may be admitted where they fall within the recognized Molineux exceptions — motive, intent, absence of mistake, common plan or scheme and identity — or where such proof is inextricably interwoven with the charged crimes, provides necessary background or completes a witness's narrative and, further, the trial court determines that the probative value of such evidence outweighs its prejudicial effect" (People v Haynes, 177 AD3d 1194, 1197 [3d Dept 2019] [internal quotation marks and citations omitted], lv denied 34 NY3d 1128 [2020]; see People v Perulli, 217 AD3d 1133, 1136 [3d Dept 2023]). With regard to the intent exception, "[w]hen [a] defendant's criminal intent cannot be inferred from the commission of the act or when [a] defendant's intent or mental state in doing the act is placed in issue, . . . proof of other [bad acts] may be admissible under the intent exception to the Molineux rule" (People v Ingram, 71 NY2d 474, 479 [1988]; see People v Alvino, 71 NY2d 233, 242 [1987]). As defendant's intent could not be inferred from the mere fact that his dogs encountered and attacked Buttons, evidence of the May 2016 attack and his failure to take any steps to stop it, as well as his [*5]comments to his coworkers, "provided relevant and necessary context with regard to defendant's state of mind" when he chose to enter the Richards' front yard with the dogs and suggested that his decision to do so was not an accident (People v Haynes, 177 AD3d at 1197-1198; see People v Mazzeo, 202 AD3d 1279, 1284 [3d Dept 2022], lv denied 38 NY3d 1072 [2022]). Supreme Court further concluded that the probative value of that proof outweighed any possible prejudicial effect, and accordingly allowed its admission with thorough limiting instructions to only consider it on the questions of defendant's intent and whether the death of Buttons was an accident or mistake. We perceive no abuse of discretion or error in that ruling (see People v Pastor, 160 AD3d 419, 420 [1st Dept 2018], lv denied 31 NY3d 1120 [2018]).
Next, Supreme Court properly rejected defendant's request to place into evidence a copy of the civil judgment obtained against him in a negligence action commenced by the Richards. Defendant is constitutionally entitled to present a defense, but his right to do so "is not absolute, and the trial court has wide latitude to exclude evidence that is repetitive, is only marginally relevant, or poses an undue risk of confusion of the issues" (People v Jack, 149 AD3d 779, 780 [2d Dept 2017] [internal citations omitted], lv denied 29 NY3d 1081 [2017]; see People v Kenyon, 108 AD3d 933, 937 [3d Dept 2013], lv denied 21 NY3d 1075 [2013]). Defendant sought to introduce the civil judgment into evidence to show that his actions leading up to the death of Buttons were previously found to be negligent, which, in his view, undercut the People's theory that he had acted with the requisite intent. It is far from clear that a civil judgment is admissible at a criminal trial to establish such a factual finding (see United States v Grey, 891 F3d 1054, 1058 [DC Cir 2018]; Zara Contr. Co. v State of New York, 42 Misc 2d 737, 739 [Ct Cl 1964]; People v Leland, 25 NYS 943, 945 [Sup Ct, Gen Term, 1st Dept 1893]). Assuming, without deciding, that it is, Supreme Court observed that the prior finding of negligence was of minimal relevance given the lower burden of proof in the underlying civil case and, moreover, posed an undue risk of confusing the jury into believing that the issue of defendant's state of mind had already been decided with conclusive effect (see United States v Grey, 891 F3d at 1058; 2 McCormick on Evidence § 298 [8th ed, July 2022 update]; see generally People v Roselle, 84 NY2d 350, 358 [1994]). We agree with that assessment and, as such, also perceive no abuse of discretion in Supreme Court declining to admit the civil judgment into evidence.
Finally, since aggravated animal cruelty required the People to prove intentional conduct by defendant, Supreme Court properly declined to charge the jury as to the difference between intent, recklessness, criminal negligence and negligence (see People v McLeod, 85 AD3d 510, 511 [1st Dept 2011], lv denied 17 [*6]NY3d 904 [2011]). Supreme Court accurately conveyed in its charge that the People must prove defendant's intent to support a conviction for aggravated animal cruelty, and defense counsel was free to, and did, argue in his summation that they had not done so (see People v Samuels, 99 NY2d 20, 26 [2002]).
Lynch, Ceresia and Fisher, JJ., concur.
ORDERED that the judgment is affirmed.