People v Siciliano (2025 NY Slip Op 05721)

People v Siciliano

2025 NY Slip Op 05721

Decided on October 16, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:October 16, 2025

CR-23-2363
[*1]The People of the State of New York, Respondent,
v
Mark L. Siciliano, Appellant.

Calendar Date:September 2, 2025

Before:Garry, P.J., McShan, Powers and Mackey, JJ.

O'Connell and Aronowitz, Albany (Stephen R. Coffey of counsel), for appellant.
Jason M. Carusone, District Attorney, Lake George (Robert P. McCarty of counsel), for respondent.

Garry, P.J.
Appeal from a judgment of the County Court of Warren County (Robert Smith, J.), rendered January 24, 2024, upon a verdict convicting defendant of the crime of unlawful surveillance in the second degree (three counts).
In 2022, the victim and her minor sister were utilizing the shower facilities at a campground where their family was vacationing when the victim's boyfriend, who had been helping the two pass toiletries between their shower stalls, noticed through a high-set exterior window a cell phone camera pointing downward into the victim's stall. The boyfriend confronted the man he discovered on the other side of that window, later identified as defendant, and demanded to see his cell phone. A photograph of the victim was present on the phone, and defendant agreed to delete it and apologized. Defendant was later taken into police custody, consented to a search of his phone, and was interviewed. During that interview, defendant asserted that he took the subject photograph inadvertently. When confronted with a conversation that law enforcement allegedly had with his wife and whether the subject conduct was in fact part of a "pattern," defendant further admitted that he had previously engaged in similar surreptitious photography of his wife. He was subsequently charged by indictment with three counts of unlawful surveillance in the second degree, as well as one count of endangering the welfare of a child that was dismissed.
Prior to trial, the People sought an order permitting the introduction of prior bad act evidence discovered during the search of defendant's phone, including Internet searches for voyeuristic content and how to mute the camera shutter sound on his cell phone and thousands of seemingly surreptitious photographs of defendant's wife in various stages of undress. County Court denied the application, agreeing with defendant that the prejudice in admitting the Internet searches and photographs outweighed the probative value of that evidence. The People later moved to reargue most of their proffer, and, in doing so, sought clarification with respect to defendant's statements to law enforcement concerning his conduct toward his wife. The court adhered to its prior decision for various reasons, while clarifying that its prior ruling did not preclude the admission of defendant's recorded custodial interview in full. Defendant later objected to the reargument ruling, arguing that County Court's rationale for denying the People's Molineux proffer applied equally to his custodial statements concerning his wife. Reiterating that the custodial statements were properly noticed and determined to be voluntary, the court noted defendant's objection and the matter proceeded to trial.
At trial, the entirety of the interview was admitted into evidence and published to the jury, without any contemporaneous limiting or other cautionary instruction. During summations, the prosecutor highlighted the "pattern" language utilized by law enforcement, and[*2], during deliberations, the jury sought clarification as to whether it could consider the officer's conversation with defendant's wife. County Court made varying efforts to address these issues but denied defendant's multiple related applications for a mistrial. Defendant was ultimately convicted as charged and sentenced to three concurrent split sentences of six months in jail with five years of probation.[FN1] He appeals, arguing that County Court's handling of the prior bad act evidence within his custodial statements ran afoul of Molineux. We agree, and we reverse.
"As a general rule, evidence of uncharged crimes or prior bad acts may be admitted where they fall within the recognized Molineux exceptions — motive, intent, absence of mistake, common plan or scheme and identity — or where such proof is inextricably interwoven with the charged crimes, provides necessary background or completes a witness's narrative" (People v Doane, 212 AD3d 875, 880-881 [3d Dept 2023] [internal quotation marks and citations omitted], lv denied 39 NY3d 1154 [2023]; see People v Cass, 18 NY3d 553, 560 [2012]; People v Molineux, 168 NY 264, 291-292 [1901]). However, even if the evidence is admissible for such purposes, it "may not be received unless its probative value exceeds the potential for prejudice resulting to the defendant" (People v Alvino, 71 NY2d 233, 242 [1987]; see People v Telfair, 41 NY3d 107, 114 [2023]; People v Ventimiglia, 52 NY2d 350, 359-360 [1981]). Thus, to determine whether Molineux evidence was properly admitted, this Court must first evaluate "whether the People have identified some material issue, other than the defendant's criminal propensity, to which the evidence is directly relevant," which is a question of law reviewed de novo (People v Hu Sin, ___ NY3d ___, ___, 2025 NY Slip Op 03100, *3 [2025] [internal quotation marks, brackets and citations omitted]). If so, the inquiry turns to the trial court's discretionary balancing determination (see People v Weinstein, 42 NY3d 439, 458 [2024]; People v Cass, 18 NY3d at 560; People v Hodge, 224 AD3d 1082, 1088 [3d Dept 2024], lv denied 41 NY3d 1002 [2024]).
During defendant's custodial interview, he claimed that he mistakenly photographed the victim in his efforts to capture an image of a lightning storm that he observed while walking to the campground bathrooms. He explained that his first attempt to take a picture of the lightning captured nothing, so he held his phone up again with a longer exposure and took another picture. Defendant then proceeded to the bathroom, where he was confronted by the victim's boyfriend. Defendant stated to law enforcement that, at that point, he realized that his cell phone camera must have been activated to face the wrong way when he captured an image of the victim showering.[FN2] An officer then asked defendant, "Now what's the deal with when I asked your wife if this has been an issue in the past, she says you've done it to her, the exact same thing in the shower[*3], and you guys have had blowouts," adding, "So this has been a pattern, you know, it's not like it was an accidental lightning strike thing." Defendant replied, "I understand that. Yes, it's my wife. I'm madly in love with her. I think she's absolutely beautiful. Yeah, I've done that to my wife."
Initially, all of the charged crimes required proof that, when defendant used his cell phone camera to photograph the victim, he had a certain purpose in mind, including his own "sexual arousal or sexual gratification" (Penal Law § 250.45 [2]; see Penal Law § 250.45 [1], [3]; see generally People v Hatton, 26 NY3d 364, 370 [2015]). Although "[e]vidence of prior criminal acts to prove intent will often be unnecessary . . . where intent may be easily inferred from the commission of the act itself," such evidence "may be admitted to prove intent . . . when proof of the act falls short of demonstrating that the defendant acted with a particular state of mind and where proof of a prior act is relevant to that issue" (People v Alvino, 71 NY2d at 242; see People v Hu Sin, ___ NY3d at ___, 2025 NY Slip Op 03100, *3; People v Ingram, 71 NY2d 474, 479 [1988]). A criminal purpose cannot be readily inferred from the generally equivocal act of taking a photograph, later deleted, in the location where defendant was standing. Thus, defendant's admission to previously taking surreptitious photographs of another woman while she showered because of his sexual interest in her was directly relevant to that legitimate nonpropensity issue (see People v Restifo, 220 AD3d 1113, 1118 [3d Dept 2023], lv denied 40 NY3d 1094 [2024]; People v MacLeod, 162 AD3d 1751, 1751 [4th Dept 2018], lv denied 32 NY3d 1005 [2018]; People v Sorrell, 108 AD3d 787, 792 [3d Dept 2013], lv denied 23 NY3d 1025 [2014]; compare People v Leonard, 29 NY3d 1, 8 [2017]; People v Reilly, 19 AD3d 736, 737 [3d Dept 2005]). Further, by inserting an innocent explanation for the charged conduct into the case, defendant's prior similar acts had obvious relevance as tending to refute the possibility of mistake or accident (see People v Goode, 176 AD3d 629, 630 [1st Dept 2019], lv denied 34 NY3d 1159 [2020]; People v Sorrell, 108 AD3d at 792; People v Gonzalez, 62 AD3d 1263, 1265 [4th Dept 2009], lv denied 12 NY3d 925 [2009]; People v Brown, 57 AD3d 1461, 1463 [4th Dept 2008], lv denied 12 NY3d 814 [2009]). We also find that the complete questioning that preceded defendant's adoptive admission was essential to understanding defendant's statements and thus also generally admissible (see People v Ely, 68 NY2d 520, 530 [1986]; compare People v Letendre, 247 AD2d 796, 796 [3d Dept 1998]; People v Chaffee, 42 AD2d 172, 174 [3d Dept 1973]). The challenged evidence thus fell squarely within multiple Molineux exceptions.
Whether the probative value of the subject evidence outweighed its potential for undue prejudice to defendant presented a much closer call. It first must be emphasized that, although expressly raised at the [*4]Molineux hearing, County Court did not address the evidence presently challenged in the initial pretrial order, the reargument ruling, or upon defendant's opposition to that ruling. The actual photographs the People initially proffered were certainly qualitatively different from defendant's custodial statements concerning the subject matter, but the court's failure to explain its disparate conclusions as to that substantively similar evidence created a confusion that was compounded throughout the trial. It was not until summations, when the prosecutor directly utilized the officer's "pattern" language, that the court first acknowledged how problematic that aspect of the interview might be/was. The court struck the prosecutor's comment, but only after repeating it once more for the jury and instructing them to "try and pretend as though that statement was never uttered." Notwithstanding that instruction, the jury quickly inquired during deliberations whether they could "consider everything in the video interview . . . , specifically the police officer's comment with regard to talking to the defendant's wife concerning shower photos." After advising that an answer to its question would require an early adjournment and overnight research, the court instructed the jury that it was not permitted to consider the officer's comment at all. The court did take the added precaution of requiring that the jurors confirm that they were able to follow that instruction. However, this retrospective altering of the evidentiary record left unclear what remained of defendant's adoptive admission, and, upon review, it is possible that the handling of the jury's note, as a whole, drew further unwarranted attention to the matter.
Turning back to prejudice, although the challenged prior bad act evidence was highly probative with respect to the foregoing legitimate purposes, there is no way around the fact that the gratuitous "pattern" allegation made by law enforcement while questioning defendant substantially tipped the scale. It was an abuse of discretion not to redact that portion of the interview, together with defendant's ambiguous "I understand that" response, prior to admitting the recording into evidence — particularly in view of how excisable it was. As illustrated above, that failure was compounded by County Court's mishandling of the challenged prior bad act evidence as a whole, most notably the lack of limiting or relevant cautionary instructions at any point during trial — although we recognize that such instructions were not formally requested (see People v Greene, 306 AD2d 639, 643 [3d Dept 2003], lv denied 100 NY2d 594 [2003]). Admission of such evidence without proscribing its use also enabled the issue that arose during summation; although the People are certainly aware of general Molineux principles, we decline to attribute all fault in this respect to the prosecutor, who merely repeated evidence that was admitted at trial. The belated instruction offered [*5]during deliberations — which narrowly answered the jury's question and thus left unaddressed how the jury should utilize what remained of defendant's adoptive admission — did little to eliminate the harm caused (see People v Calabria, 94 NY2d 519, 523 [2000]). The People's case was less than overwhelming, hinging as it did on the competing narratives of defendant and the victim's boyfriend, and County Court's errors thus cannot be deemed to have been harmless (see People v Crimmins, 36 NY2d 230, 241 [1975]; People v Hansel, 200 AD3d 1327, 1331-1332 [3d Dept 2021], lv denied 38 NY3d 927 [2022]). Ultimately, we must agree that defendant was deprived of his right to a fair trial, and a new trial is therefore required.
McShan, Powers and Mackey, JJ., concur.
ORDERED that the judgment is reversed, on the law, and matter remitted to the County Court of Warren County for a new trial.

Footnotes

Footnote 1: This Court granted defendant's presentence application to be released on bail pending determination of this appeal.

Footnote 2: Although defendant admitted to having photographed the victim, the extent to which the victim's body was captured in the deleted image was disputed.